IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,      :

    Plaintiffs,      :
                              Case No. 3:10cv195

          vs.      :
                              JUDGE WALTER HERBERT RICE

WASTE MANAGEMENT OF OHIO,      :
INC., *et al*.
                            :

    Defendants.

---

DECISION AND ENTRY OVERRULING, IN PART, AND SUSTAINING,
IN PART, MOTION TO DISMISS OF DEFENDANT DAYTON POWER
AND LIGHT (DOC. #27) AND MOTION TO DISMISS OF DEFENDANT
BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC (DOC. #33); AND
SUSTAINING MOTION TO DISMISS OF DEFENDANT IRG DAYTON I
LLC (DOC. #35)

---

With regard to environmental clean-up costs associated with certain property

known as the South Dayton Dump and Landfill Site (the "Site"),[1] the Plaintiffs,

Hobart Corporation, Kelsey-Hayes Company and NCR Corporation, bring suit under

the Comprehensive Environmental Response, Compensation, and Liability Act

("CERCLA"), 42 U.S.C. §§ 9601-9675, as well as under Ohio common law,

against the following Defendants:  Waste Management of Ohio, Inc., The Bimac

---

[1] The property in question is located at 1975 Dryden Road, in Moraine, Ohio.
Doc. #69 (2nd Am. Compl.) ¶ 2.

Corporation, Bridgestone Americas Tire Operations, LLC,[2] Cargill, Inc., The Dayton Power & Light Company, Monsanto Company, Valley Asphalt Corporation, IRG Dayton I, LLC, and "John Doe" corporations. Doc. #69 (2nd Am. Compl.). Specifically, the Second Amended Complaint alleges four claims, to wit:  (1) cost recovery, under CERCLA Section 107(a) (Count I); (2) contribution, under CERCLA Section 113(f)(3)(B) (Count II); (3) unjust enrichment (Count III); and (4) declaratory judgment (Count IV). Id.

Presently before the Court are Motions to Dismiss filed by Defendant Dayton Power and Light ("DP&L") (Doc. #27), Defendant Bridgestone Americas Tire Operations, LLC ("Bridgestone") (Doc. #33) and Defendant IRG Dayton I LLC ("IRG") (Doc. #35).[3]  Defendants DP&L and Bridgestone both assert that the Plaintiffs have failed to state claims, under Federal Rule of Civil Procedure 12(b)(6), as to all four claims.  Defendant IRG, on the other hand, asserts only that the Plaintiffs' claim under CERCLA Section 107(a) should be dismissed, for failure to

---

[2]In their Second Amended Complaint, the Plaintiffs mistakenly referred to this Defendant as "Bridgestone/Firestone, Inc." Id.; Doc. #33 (Bridgestone Mem. Spt.) at 1.

[3]The three Defendants filed their Motions to Dismiss prior to the date the Plaintiffs filed a Second Amended Complaint. Doc. #69.  The Plaintiffs filed the Second Amended Complaint at the Court's direction, in order to correct an inadvertent omission of language that occurred in the transmission to the Court, of the First Amended Complaint. See Docs. #17; #68.  The language in question pertained only to the claim against Defendant IRG. See Doc. #68 at 2.  Given that Defendant IRG proceeded, in its Motion to Dismiss, as if the omitted language was present, and that the omitted language did not impact Defendants DP&L and Bridgestone, the Court will treat all three Motions to Dismiss as if they are directed at the claims, as set forth in the Second Amended Complaint.

state a claim.[4]

In analyzing the three Motions to Dismiss, the Court will begin with a summary of the pertinent facts and will then turn to a consideration of the standard that guides its decisions on Motions to Dismiss. It will then conclude with an analysis of the merits of the three Motions that are presently before it.

I.      Facts[5]

The allegations in the Complaint include the following pertinent factual

_____

[4]While IRG's Motion and memorandum in support of the same request that the Court dismiss the Amended Complaint in its entirety, as against IRG (Doc. #35 at 1, 10), those documents in no fashion address the claims for unjust enrichment or declaratory judgment and only makes passing mention of the claim under CERCLA Section 113(f)(3)(B).

[5]Defendant IRG also relies on information allegedly taken from the Ohio Secretary of State's web site. Doc. #35 at 5. In ruling on a Rule 12(b)(6) motion, a court considers primarily the allegations contained in the complaint and any attachments thereto. A court may also consider, however, "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008) (citing Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)). While information from the Secretary of State's web site may be "public records," the Court has been unable to access the web site identified in the briefing materials. Therefore, the Court will not consider these allegations when ruling herein.
    IRG has also relied on information contained in an unauthenticated "Amended and Restated Real Property Purchase Agreement," between itself and Delphi Automotive Systems LLC, which it attaches, with exhibits, as Exhibit A to its Motion to Dismiss. Doc. #35 at 4-5; Doc. #35-1. The Court will not rely on this information for the following reasons: (1) it is unauthenticated; (2) there is no indication that it is a "public record" or that it is referred to in the Complaint; and (3) the Court finds it unnecessary, given its conclusions *infra*.

averments, which must be taken as true for purposes of the Court's analysis of the

Motions to Dismiss:

- The United States Environmental Protection Agency ("EPA") has identified contaminants at the Site, consisting of certain hazardous substances. Doc. #69 (2nd Am. Compl.) ¶ 3.

- Waste disposal started at the Site, in 1941. Known hazardous substances, to include certain identified organic and inorganic compounds, were disposed at the Site between June 1973 and July 1976. Id. ¶ 22.

- In accordance with the pertinent CERCLA provisions, . . . there has been a "release" and/or "threatened release" at the Site, the organic and inorganic compounds detected at the Site at elevated levels are "hazardous substances," and the release and/or threatened release has caused and will continue to cause the Plaintiffs to incur response costs, including costs for removal and/or remedial actions, which are necessary and consistent with the National Contingency Plan.[6] Id. ¶¶ 24-26.

- Hazardous substances released on adjacent properties have been allowed to migrate from adjacent properties through the groundwater to contaminate the Site. Id. ¶ 22.

- Contaminants have been detected in both the soil and groundwater at the Site at concentrations above background levels or maximum contaminant levels as established by the EPA. Id. ¶ 39.

- The Plaintiffs entered into a settlement with the EPA, under the Superfund Alternative Sites program, for performance of the remedial investigation and feasibility study ("RI/FS") for the Site, in compliance with the National Contingency Plan. Id. ¶ 4. Also, the Plaintiffs and the EPA entered into an Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study, which became

---

[6]In support thereof, the Plaintiffs cite the following: 42 U.S.C. §9601(9) ("facility"); 42 U.S.C. §§ 9601(22), 9607(a) ("release" and "threatened release"); 42 U.S.C. § 9601(14) ("hazardous substances"); 42 U.S.C. §9601(23)-(25) ("removal," "remedial action" and "response").

4

effective August 15, 2006 ("Settlement Agreement"). Id. ¶ 41.

- The Plaintiffs have incurred and will continue to incur costs in the performance of the RI/FS including, but not limited to, costs of investigation, testing, evaluating and removal of some or all of the contamination. Id. ¶ 5.  Further, the Plaintiffs have incurred response costs and will continue to incur response costs in connection with the Site.  These costs have been and will continue to be (i) for actions taken in response to the release or threatened release of hazardous substances at the Site; (ii) necessary costs of response incurred by Plaintiffs consistent with the National Contingency Plan; and (iii) in excess of Plaintiffs' equitable shares. Id. ¶ 43.

Specifically with regard to Defendant Bridgestone, the Second Amended Complaint alleges that Bridgestone is the legal successor in interest to Dayton Tire & Rubber Company ("Dayton Tire"), and that Dayton Tire arranged for the disposal of wastes at the Site, including waste containing hazardous substances from its facilities and operations located in and around Dayton. Id. ¶ 28.  Further, Dayton Tire contributed to contamination at the Site, through its disposal of wastes that included hazardous substances, at the Site. Id.

As to Defendant DP&L, the Second Amended Complaint avers that DP&L arranged for the disposal of wastes at the Site, including waste containing hazardous substances from its facilities and operations located in and around Dayton. Id. ¶ 31.  Further, DP&L contributed to contamination at the Site through its disposal of wastes that included hazardous substances at the Site, as well as by releasing hazardous substances on its property adjacent to the Site and allowing these hazardous substances to migrate through the groundwater to contaminate the Site. Id.  DP&L was a regular customer at the Site and had its own key for 24

5

hour access to the Site for disposal of its waste materials, including wastes containing hazardous substances. Id. ¶ 32.

With regard to Defendant IRG, the Second Amended Complaint alleges that IRG is the owner of certain parcels of real estate that comprise the property adjacent to the Site known as the Wisconsin Boulevard Site, with a street address of 1515 Cincinnati Street, Dayton, Montgomery County, Ohio (the "WBS Property"). Id. ¶ 38. Further, the WBS Property contains hazardous substances which IRG has failed to contain and has allowed these hazardous substances to migrate through the groundwater to contaminate the Site. Such migration constitutes an arrangement for the disposal of hazardous substances. Id.

The Second Amended Complaint also alleges that the three Defendants in question "are persons who arranged for disposal or treatment at the Site, or arranged with a transporter for transport for disposal or treatment at the Site, of hazardous substances owned or possessed by [them]." Id. at 45.


II.    Standard for Motions to Dismiss for Failure to State a Claim, under Federal
       Rule of Civil Procedure 12(b)(6)

In Prater v. City of Burnside, Ky., 289 F.3d 417 (6th Cir. 2002), the Sixth Circuit reiterated the fundamental principles which govern the ruling on a motion to dismiss under Rule 12(b)(6):

> The district court's dismissal of a claim pursuant to Rule 12(b)(6) of
> the Federal Rules of Civil Procedure is also reviewed de novo.
> Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999),

6

overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S.
506 (2002).  When deciding whether to dismiss a claim under Rule
12(b)(6), "[t]he court must construe the complaint in a light most
favorable to the plaintiff, and accept all of [the] factual allegations as
true." Id. (citation omitted).

Id. at 424.  In Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the Supreme

Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires

that a complaint contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Id. at 212.  Therein, the Court explained further:

> Such a statement must simply "give the defendant fair notice of what
> the plaintiff's claim is and the grounds upon which it rests." Conley v.
> Gibson, 355 U.S. 41, 47 (1957).  This simplified notice pleading
> standard relies on liberal discovery rules and summary judgment
> motions to define disputed facts and issues and to dispose of
> unmeritorious claims. See id., at 47-48; Leatherman v. Tarrant County
> Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169
> (1993).  "The provisions for discovery are so flexible and the
> provisions for pretrial procedure and summary judgment so effective,
> that attempted surprise in federal practice is aborted very easily,
> synthetic issues detected, and the gravamen of the dispute brought
> frankly into the open for the inspection of the court." 5 C. Wright & A.
> Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990).

Id. at 512-13.  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955,

167 L. Ed. 2d 929 (2007), the Supreme Court rejected the standard established in

Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a claim should not be

dismissed "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief."  The Supreme Court

recently expounded upon Twombly in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937

(2009), writing:

7

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the–defendant–unlawfully– harmed–me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  550 U.S., at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).

Two working principles underlie our decision in Twombly.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper–technical, code–pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Id. at 1949-50.

In sum, on the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949-50).  Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009)).


III.    Legal Analysis

"Broadly speaking, [CERCLA] facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances." ITT Indus. v. BorgWarner, Inc., 506 F.3d 452, 456 (6th Cir. 2007) (citing, among others, United States v. R.W. Meyer, Inc., 889 F.2d 1497, 1500 (6th Cir. 1989); H. Rep. No. 1016(I), 96th Cong., 2d Sess. 22, reprinted in 1980 U.S.C.C.A.N. 6119, 6125).  To that end, CERCLA contains provisions that allow for two different remedies for the reimbursement of cleanup and prevention costs at contaminated

9

sites. Section 107 provides for "cost recovery" actions by the government and private parties against potentially responsible parties ("PRPs"). 42 U.S.C. § 9607(a); see also ITT Indus. v. BorgWarner, Inc., 506 F.3d 452, 456 (6th Cir. 2007). Section 113, on the other hand, allows for "contribution" actions. 42 U.S.C. § 9613(f). The Sixth Circuit cites the Supreme Court's decision in United States v. Atlantic Research Corporation, 551 U.S. 128, 127 S. Ct. 2331, 168 L. Ed. 2d 28 (2007), in distinguishing when a cost recovery action under Section 107 is appropriate, as opposed to a Section 113 contribution action.

> [A] § 107(a) action may lie where a party has itself "incurred" cleanup costs as opposed to reimbursing costs paid by other parties, which is more appropriately covered by § 113(f). To maintain the vitality of § 113(f), however, PRPs who have . . . entered into a judicially or administratively approved settlement must seek contribution under § 113(f).

ITT Indus. v. BorgWarner, Inc., 506 F.3d 452 (6th Cir. 2007) (citing Atl. Research Corp., 127 S. Ct. at 2338). In so stating, the Appellate Court acknowledges that the Supreme Court has indicated possible overlap in the two provisions. Id. (citing Atl. Research Corp., 551 U.S. at 139 n.6). As to that possible overlap, the Supreme Court opines as follows:

> We do not suggest that §§ 107(a)(4)(B) and 113(f) have no overlap at all. For instance, we recognize that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a). In such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party. We do not decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both.

Atl. Research Corp., 551 U.S. at 139 n.6 (citations omitted). As will be further

10

explained below, this Court finds it unnecessary to answer the question left open by the Supreme Court, in that it need not decide whether the present Plaintiffs may recover under both Sections 107 and 113.

As previously noted, the Plaintiffs have brought suit against the Defendants for both "cost recovery," under Section 107(a), and for "contribution," under Section 113(f)(3)(B). The Plaintiffs also bring claims for unjust enrichment and declaratory judgment. Defendants DP&L and Bridgestone have moved to dismiss all four claims, under Federal Rule of Civil Procedure 12(b)(6). Docs. #27, #33. Defendant IRG has moved to dismiss only the Section 107(a) claim. The Court will consider each claim, in turn.


A.   Cost Recovery, under CERCLA Section 107(a) (Count I), as against
     Defendants DP&L, Bridgestone and IRG

As Count I in their Second Amended Complaint, the Plaintiffs bring suit against DP&L, Bridgestone and IRG (as well as against the other Defendants), under CERCLA Section 107(a). Specifically, the Plaintiffs allege that the Defendants "are persons who arranged for disposal or treatment at the Site . . . of hazardous substances owned or possessed by [them]." Doc. #69 ¶ 45. As to Defendants DP&L and Bridgestone, the Second Amended Complaint alleges that they directly disposed of wastes at the Site that included hazardous substances. See id. ¶¶ 28, 31. This part of the Section 107 claim will be referred to as the "base claim" against DP&L and Bridgestone. Further, as to Defendant DP&L, the

11

Second Amended Complaint avers as follows:

> . . . In addition, DP&L released hazardous substances on its property adjacent to the Site and allowed these hazardous substances on its property to migrate through the groundwater to contaminate the Site. Such migration constitutes an arrangement for the disposal of a hazardous substance.

Id. ¶ 31. Similarly, as to Defendant IRG, the Second Amended Complaint avers as follows:

> . . . The WBS Property contains hazardous substances which IRG has failed to contain and has allowed these hazardous substances to migrate through the groundwater to contaminate the Site. Such migration constitutes an arrangement for the disposal of a hazardous substance.

Id. ¶ 38.[7] The latter claims against DP&L and IRG will be referred to herein as the "migration claims."

According to the Sixth Circuit, a *prima facie* case for CERCLA recovery under Section 107(a) has four elements:

---

[7]The factual components of the claim against Defendant IRG are different than the claims against most of the other Defendants. Specifically, the Plaintiffs have alleged that six of the eight Defendants (Waste Management of Ohio, Inc., The Bimac Corporation, Bridgestone Americas Tire Operations, LLC, Cargill, Inc., The Dayton Power & Light Company, and Monsanto Company), not to include IRG or Monsanto, directly disposed of hazardous wastes at the Site (i.e., used the Site for its intended purpose as a dump/landfill). Doc. #69 ¶ 27 (Waste Management), ¶ 28 (Bridgestone), ¶ 29 (Bimac), ¶ 30 (Cargill), ¶ 31 (DP&L), ¶ 33 (Monsanto). Further, along with the base claim asserted against DP&L (that it directly disposed of hazardous wastes directly at the Site), the Plaintiffs assert a migration claim against DP&L (id. ¶ 31), as they do against Defendant IRG. As to the eighth Defendant, Valley Asphalt Corporation, the Plaintiffs allege that it owns property within the Site boundaries and has contributed to the contamination of the Site as a result of having "no control of storm water or wash water runoff" pertinent to a large mound of asphalt on its property. Id. ¶¶ 34-37.

(1) the property is a "facility;"

(2) there has been a "release" or "threatened release" of a hazardous substance;

(3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP; and

(4) the defendant is in one of four categories of potentially responsible parties.

Reg'l Airport Auth. v. LFG, LLC, 460 F.3d 697, 703 (6th Cir. 2006) (citing Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc., 240 F.3d 534, 541 (6th Cir. 2001)). As to the fourth prong and pertinent to the present litigation, Section 107(a) imposes "arranger liability" on persons who "by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances," stating that they "shall be liable for . . . any . . . necessary costs of response incurred by any [person other than the United States Government or a State or an Indian tribe] consistent with the national contingency plan." 42 U.S.C. § 9607(a)(3), (4)(B) (emphasis added).

In their Motions to Dismiss, all three of the Defendants assert that the Plaintiffs have failed to allege facts indicating that the Defendants had the requisite "intent" to dispose of hazardous substances and, thus, cannot be held liable as "arrangers," in support of the fourth prong of their *prima facie* case.[8] Doc. #27 at

---

[8]In its reply memorandum, DP&L also criticizes the Plaintiffs for referring to their Section 107 claim as a claim for "contribution." Doc. #55 at 7-9. The Defendant is correct. Courts have generally recognized that Section 107 provides for "cost recovery" actions, while Section 113 provides for "contribution" actions. E.g., ITT Indus. v. BorgWarner, Inc., 506 F.3d 452, 457 (6th Cir. 2007) (noting

16-19, Doc. #33 at 11-12; Doc. #35 at 6-7; Doc. #55 at 9-11; Doc. #56 at 4-9;

Doc. #61 at 9. As to its migration claim, DP&L also alleges that the Plaintiffs have

insufficiently plead facts to support the second and third prongs of their *prima facie*

case, whether there was a "release"/"threatened release" of a hazardous

substance and whether the release "caused" the Plaintiffs to incur necessary costs

of response. Doc. #27 at 19-21; Doc. #55 at 11-13. Defendant Bridgestone, on

the other hand, alleges generally that the Plaintiffs have merely recited the

elements of their Section 107(a) claim, without pleading facts sufficient to support

the same. Doc. #33 at 10-11. Finally, Defendant IRG asserts that the Plaintiffs'

Second Amended Complaint is deficient because it contains no allegation that a

contract or agreement was made (as is allegedly required for pleading arranger

liability), because "passive migration" is not a "disposal" for purposes of arranger

liability,[9] and because it should be entitled to the "innocent owner" defense

provided by Section 107(b)(3), in that a previous owner of the WBS Property

---

that "the appropriateness of a § 107(a) cost recovery or § 113(f) contribution
action varies depending on the circumstances leading up to the action" (emphasis
added)). The Court will not, however, penalize the Plaintiffs for the use of
improper semantics. Rather it will determine whether the Second Amended
Complaint properly sets forth a claim under Section 107, using mandated statutory
and case law requirements.

[9]IRG expresses confusion about what category of potentially responsible
parties the Plaintiffs are claiming it is and, thus, argues a couple of different points,
on this issue. Doc. #35 at 5-9. In their responsive memorandum, the Plaintiffs
clarify that they are seeking to hold IRG liable only as an "arranger" under
CERCLA's Section 107(a)(3). Doc. #57 at 10. Thus, the Court will limit its
analysis to whether the Second Amended Complaint adequately pleads an
"arranger liability" claim against IRG.

caused the contamination, rather than IRG.[10] Doc. #35 at 6-8.

In response, the Plaintiffs contend that, in a case such as theirs (in which an entity enters into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance), it is not necessary that the Second Amended Complaint include express allegations of "intent" and that the Defendants have misinterpreted the Supreme Court authority they rely on, in suggesting the same. Doc. #39 at 14-20 (discussing, among others, Burlington Northern & Santa Fe Ry. v. United States, 129 S. Ct. 1870, 173 L. Ed. 2d 812 (2009)). The Plaintiffs also argue that the Second Amended Complaint adequately pleads a plausible Section 107(a) claim, as to all other elements of the same. Id. at 20-23. With regard to the additional allegations made by IRG, the Plaintiffs argue as follows: (1) CERCLA imposes "arranger liability" on persons who "by contract, agreement, or otherwise" arranged for disposal or treatment and, thus, it is not necessary to allege the existence of a contract or agreement; (2) the Sixth Circuit case relied upon by IRG in support of its "passive migration" argument should not be read as broadly as IRG suggests; and (3) as to IRG's innocent owner defense argument, the same is improper for the Court to consider, at this stage of the litigation, since no discovery has yet been conducted. Doc. #57 at 10-19.

---

[10]In its Reply Memorandum, IRG also seems to be making the argument that its property is not really "adjacent" to the Site in question, in that "[t]he WBS Property and the Site appear to be approximately one-half (½) mile apart, 'as the crow flies.'" Doc. #61 at 6 n.3. Since this argument was not raised in the Memorandum in Support of the Motion to Dismiss, the Court will not consider the same when ruling herein.

The Court will first make quick work out of the disagreement pertaining to the need to plead a "contract" or "agreement," in a CERCLA Section 107 "arranger liability" claim. As properly noted by the Plaintiffs, Section 107 provides that arranger liability will attach if a person arranged for the disposal of hazardous substances, "by contract, agreement, or otherwise." 42 U.S.C. § 9607(a)(3) (emphasis added). Therefore, there is no merit to IRG's contention that the Second Amended Complaint should be dismissed for lack of pleading the existence of a contract or agreement.

Turning now to a consideration of "intent," considerable controversy exists between the parties as to whether there exists a requirement that an entity must take "intentional steps to dispose of a hazardous waste" when determining whether an entity is liable, under Section 107(a), as an "arranger." Thus, the Court will resolve this issue, following which it will consider the Defendants' other challenges to the sufficiency of the Second Amended Complaint, to the extent necessary.

1.  Fourth Prong of CERCLA Section 107(a) *Prima Facie* Case: State of Mind Pleading Requirement for CERCLA Arranger Liability

The fourth prong of the CERCLA Section 107(a) *prima facie* case requires that "the defendant [be] in one of four categories of potentially responsible parties." Reg'l Airport Auth. v. LFG, LLC, 460 F.3d 697, 703 (6th Cir. 2006). The category that is pertinent to the present litigation is that of an "arranger," as

16

provided in 42 U.S.C. § 9607(a)(3). As noted above, the parties dispute whether it is necessary for a complaint to allege that the a defendant took intentional steps to dispose of hazardous wastes, in order to properly plead an arranger liability claim. At the heart of the Section 107 arranger liability "intent" question is the Supreme Court's recent decision in <u>Burlington Northern & Santa Fe Ry. v. United States</u>, 129 S. Ct. 1870, 173 L. Ed. 2d 812 (2009)). The Court begins this analysis by providing the following summary of the pertinent portions of that decision.[11]

    <u>Burlington Northern</u> arose out of lawsuits filed by the United States and two railroads, Burlington Northern and Santa Fe Railway Company and the Union Pacific Railroad Company, against Shell Oil Company, to obtain some or all the sums that they had expended to remediate a hazardous waste site. The railroads had leased part of the property they owned in Arvin, California, to a business that distributed agricultural chemicals. That business, Brown & Bryant, Inc. ("B&B"), purchased the pesticides D-D and Nemagon from Shell Oil Company ("Shell"), as well as other hazardous chemicals from other manufacturers. Shell would ship those pesticides to B&B by common carrier. B&B stored the Nemagon in 30-gallon drums and 5-gallon containers inside its warehouse at Arvin, before distributing the pesticide to users. In contrast, Shell delivered the D-D in bulk, which required that the

---

[11]This summary is borrowed, in part, from another case decided by this Court, in which the same question was presented. <u>United States v. Atlas Lederer Co.</u>, 2009 U.S. Dist. LEXIS 126350, **14-21 (S.D. Ohio Sept. 1, 2009).

pesticide be transferred from the tanker truck, which had transported it, to a bulk

storage tank at B&B's Arvin facility.  During each of those transfers, some of the

pesticide spilled on the ground, despite efforts by the common carrier and B&B

employees to catch the spills with buckets.  The D-D pesticide was one of the

primary hazardous substances which necessitated the need to cleanup the

railroads' property in Arvin.

As indicated, the United States and the railroads filed separate lawsuits to

recover some or all of the costs each had incurred to remediate the Arvin

hazardous waste site from Shell.  The District Court concluded that liability could

be imposed upon Shell as an arranger, in accordance with § 107(a)(3).  Upon

appeal, the Ninth Circuit affirmed.  The Supreme Court described the decision of

the Ninth Circuit:

> The Court of Appeals acknowledged that Shell did not qualify as a
> "traditional" arranger under § 9607(a)(3), insofar as it had not
> contracted with B&B to directly dispose of a hazardous waste
> product.  Nevertheless, the court stated that Shell could still be held
> liable under a "'broader' category of arranger liability" if the "disposal
> of hazardous wastes [wa]s a foreseeable byproduct of, but not the
> purpose of, the transaction giving rise to" arranger liability.  Relying on
> CERCLA's definition of "disposal," which covers acts such as
> "leaking" and "spilling,", the Ninth Circuit concluded that an entity
> could arrange for "disposal" "even if it did not intend to dispose" of a
> hazardous substance.

Burlington Northern, 129 S. Ct. at 1877 (citing United States v. Burlington N. &

Santa Fe Ry., 520 F.3d 918, 948-49 (9th Cir. 2008); 42 U.S.C. § 6903(3)).

Applying that theory of arranger liability to the District Court's findings of

fact, the Ninth Circuit held that Shell arranged for the disposal of a hazardous

18

substance through its sale and delivery of D-D: "Shell arranged for delivery of the substances to the site by its subcontractors; was aware of, and to some degree dictated, the transfer arrangements; knew that some leakage was likely in the transfer process; and provided advice and supervision concerning safe transfer and storage. Disposal of a hazardous substance was thus a necessary part of the sale and delivery process." Id. at 1877 (quoting Burlington N., 520 F.3d at 950). "Under such circumstances, the court concluded, arranger liability was not precluded by the fact that the purpose of Shell's action had been to transport a useful and previously unused product to B & B for sale." Id.

Upon Shell's further appeal, the Supreme Court reversed and concluded that Shell was not liable as an arranger.[12] To reach that conclusion, the Supreme Court initially noted that Section 107 applies to an entity that "arrange[s] for disposal ... of hazardous substances." Id. at 1878 (brackets and ellipses in the original). The Court explained that statutory language as follows:

> It is plain from the language of the statute that CERCLA liability would attach under § 9607(a)(3) if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance. It is similarly clear that an entity could not be held liable as an arranger merely for selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination. Less clear is the liability attaching to the many permutations of "arrangements"

---

[12]The Supreme Court's decision was captioned Burlington Northern and Santa Fe Railway Co. v. United States, because, in addition to deciding Shell's appeal, that decision also resolved the railroads' appeal of the decision of the Ninth Circuit to reverse the District Court's finding that the harm caused by each PRP could be apportioned.

> that fall between these two extremes--cases in which the seller has
> some knowledge of the buyers' planned disposal or whose motives for
> the "sale" of a hazardous substance are less than clear. In such
> cases, courts have concluded that the determination whether an entity
> is an arranger requires a fact-intensive inquiry that looks beyond the
> parties' characterization of the transaction as a "disposal" or a "sale"
> and seeks to discern whether the arrangement was one Congress
> intended to fall within the scope of CERCLA's strict-liability provisions.

Id. at 1878-79 (citations omitted) (emphasis added). The Supreme Court then

went on to note that, "[i]n common parlance, the word 'arrange' implies action

directed to a specific purpose," which then prompted it to conclude that "under the

plain language of the statute, an entity may qualify as an arranger under [Section

107(a)(3)] when it takes intentional steps to dispose of a hazardous substance." Id.

at 1879 (emphasis added) (citing Merriam-Webster's Collegiate Dictionary 64 (10th

ed. 1993)). In support of its conclusion, the Supreme Court cited United States v.

Cello-Foil Products, Inc., 100 F.3d 1227 (6th Cir. 1996), and the following

quotation from that Sixth Circuit decision:  "[I]t would be error for us not to

recognize the indispensable role that state of mind must play in determining

whether a party has 'otherwise arranged for disposal ... of hazardous substances.'"

129 S.Ct. at 1879 (quoting Cello-Foil, 100 F.3d at 1231).

The Burlington Northern Court also noted that Congress used the definition

of the term "disposal," in CERCLA, which it had adopted from the Solid Waste

Disposal Act. Id. at 1879-80 (citing 42 U.S.C. §§ 9601(29), 9603(3)). The latter

statute defines "disposal" as "the discharge, deposit, injection, dumping, spilling,

leaking, or placing of any solid waste or hazardous waste into or on any land or

20

water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3). In explaining its conclusion that Shell had not arranged for the "disposal" of a hazardous substance, the Supreme Court wrote:

> While it is true that in some instances an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes, knowledge alone is insufficient to prove that an entity "planned for" the disposal, particularly when the disposal occurs as a peripheral result of the legitimate sale of an unused, useful product. In order to qualify as an arranger, Shell must have entered into the sale of D-D with the intention that at least a portion of the product be disposed of during the transfer process by one or more of the methods described in § 6903(3). Here, the facts found by the District Court do not support such a conclusion.
>
> Although the evidence adduced at trial showed that Shell was aware that minor, accidental spills occurred during the transfer of D-D from the common carrier to B&B's bulk storage tanks after the product had arrived at the Arvin facility and had come under B&B's stewardship, the evidence does not support an inference that Shell intended such spills to occur. To the contrary, the evidence revealed that Shell took numerous steps to encourage its distributors to reduce the likelihood of such spills, providing them with detailed safety manuals, requiring them to maintain adequate storage facilities, and providing discounts for those that took safety precautions. Although Shell's efforts were less than wholly successful, given these facts, Shell's mere knowledge that spills and leaks continued to occur is insufficient grounds for concluding that Shell "arranged for" the disposal of D-D within the meaning of § 9607(a)(3). Accordingly, we conclude that Shell was not liable as an arranger for the contamination that occurred at B&B's Arvin facility.

Burlington Northern, 129 S. Ct. at 1880 (emphasis added).

Based on this Supreme Court authority, this Court concludes that intent is

21

part of the equation for a Section 107 arranger liability claim.[13] That does not end the present inquiry, however. The Court must now determine whether the Second Amended Complaint adequately pleads the claim in question, in order to pass muster under the standard established by the Supreme Court, in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

As previously noted, the Second Amended Complaint makes a "base claim" against Defendants DP&L and Bridgestone, alleging that they directly disposed of wastes at the Site that included hazardous substances. Doc. #69 ¶¶ 28, 31. Also, the Second Amended Complaint makes a "migration claim" against Defendants DP&L and IRG, alleging that they allowed hazardous substances on their adjacent properties to migrate and contaminate the Site. <u>Id.</u> ¶¶ 31, 38.

As to the "base claim" against DP&L and Bridgestone, the Court concludes

---

[13]The Plaintiffs argue that it is premature for the Court to consider the "intent" question at this stage of the litigation. Docs. #39 at 16, #57 at 11-12. The cases they offer in support of their assertion are <u>Ascon Properties, Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1152 (9th Cir. 1989) and <u>United States v. Cello-Foil Products, Inc.</u>, 100 F.3d 1227, 1230 (6th Cir. 1996). The Court finds the Plaintiffs' argument, on this point, to be unpersuasive. Both of the cited cases predate the Supreme Court's ruling in <u>Burlington Northern & Santa Fe Ry. v. United States</u>, 129 S. Ct. 1870, 173 L. Ed. 2d 812 (2009). Furthermore, neither of the cases indicates or discusses whether the relevant complaints alleged intent. Also, courts deciding this issue since the Supreme Court's decision in <u>Burlington Northern</u> have concluded that it is appropriate to dismiss complaints for failure to properly plead intent, in CERCLA arranger liability claims. <u>E.g.</u>, <u>Wells Fargo Bank, N.A. v. Renz</u>, 2011 U.S. Dist. LEXIS 3109, **12-13 (N.D. Cal. Jan. 12, 2011); <u>Team Enters., LLC v. Western Inv. Real Estate Trust</u>, 721 F. Supp. 2d 898, 905 (E.D. Cal. 2010); <u>Gov't of the United States V.I. v. Vulcan Materials Co.</u>, 2010 U.S. Dist. LEXIS 66104, *22 (D.V.I. July 1, 2010).

that the allegations unquestionably state a plausible claim under Section 107. The ease of this decision is based on the nature of the conduct in question. The present situation involves a dump and landfill. The Second Amended Complaint alleges that the two Defendants directly disposed of hazardous wastes therein. Although the word "intent" is not specifically included in the averment, the state of mind is implied in the very nature of the alleged disposal activity. The situation, in the present litigation, is the easy case posited by the Supreme Court where "CERCLA liability would attach under § 9607(a)(3) if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance," rather than the "[l]ess clear" situation presented in Burlington Northern where "the seller has some knowledge of the buyers' planned disposal or whose motives for the 'sale' of a hazardous substance are less than clear." Burlington Northern, 129 S. Ct. at 1878-79. Thus, the Court finds no basis for the present Defendants' claim that the Second Amended Complaint does not present a plausible claim for arranger liability, under Section 107(a), for failure to specifically allege "intent," with regard to the Second Amended Complaint's base claim that the Defendants in question disposed of wastes directly at the Site, which included hazardous substances.

As to the additional claim that DP&L and IRG allowed hazardous substances on their property to migrate and contaminate the Site, the Court concludes that this averment does not state a plausible claim for arranger liability, under Section

107(a).  Rather than alleging a direct disposal at the Site, as with the base claim, this allegation more vaguely alleges conduct on adjacent properties that ultimately impacted the Site in question.  This allegation more closely fits the "in between" scenario presented to the Burlington Northern Court.  Thus, this Court interprets the Supreme Court's holding in that case to require that the present Plaintiffs aver more specifically that DP&L and IRG entered into the transactions in question (releasing hazardous substances on their adjacent properties and allowing it to migrate to the Site) "with the intention that at least a portion of the product be disposed of during the [release] by one or more of the methods described in § 6903(3)."  See Burlington Northern, 129 S. Ct. at 1880.  Therefore, the Court concludes that the Second Amended Complaint insufficiently pleads the intent requirement, with regard to the migration claims against Defendants DP&L and IRG.

    In sum, then, the Plaintiffs have not plead sufficient factual matter to render the migration claims against Defendants DP&L and IRG plausible.  Therefore, Defendant DP&L's Motion to Dismiss (Doc. #27) and Defendant IRG's Motion to Dismiss (Doc. #35) are well taken, as they pertain to the migration claims.  In order to conserve scare judicial resources, the Court will not consider the remaining arguments advanced by the parties, pertaining to the migration claims, but will continue with an analysis of the arguments pertaining to the base claims against DP&L and Bridgestone.

2.  General Pleading Requirements under Twombly

Defendant Bridgestone asserts generally that the Plaintiffs have merely recited the elements of their Section 107(a) claim, without pleading facts sufficient to support the same.  The Court has addressed *supra* the applicable considerations of the fourth prong of the *prima facie* case for arranger liability under Section 107(a).  The Court will now consider the first three prongs, to wit:  (1) whether the property is a "facility;" (2) whether there has been a "release" or "threatened release" of a hazardous substance; and (3) whether the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP.  Reg'l Airport Auth. v. LFG, LLC, 460 F.3d 697, 703 (6th Cir. 2006) (citation omitted).

a.  First Prong of CERCLA Section 107(a) *Prima Facie* Case:  Whether the Site is a "Facility"

The first prong of the CERCLA Section 107(a) *prima facie* case requires that the property in question be a "facility." Reg'l Airport Auth. v. LFG, LLC, 460 F.3d 697, 703 (6th Cir. 2006).  As to this requirement, the Second Amended Complaint alleges as follows:

- The [EPA] has identified contaminants at the Site consisting of certain hazardous substances . . . . Doc. #69 ¶ 3.

- The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. §9601(9). Id. ¶ 23.

25

According to CERCLA, the term "facility" means ". . . any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ." 42 U.S.C. § 9601(9).  This Court concludes that the Second Amended Complaint adequately pleads the first prong of the Section 107(a) *prima facie* case (that the Site is a "facility"), in alleging that the EPA has identified contaminants at the Site consisting of certain hazardous substances.  Therefore, Bridgestone's contentions, on this point, are without merit.

> b.  Second and Thirds Prong of CERCLA Section 107(a) *Prima Facie* Case:  Whether There was Release or Threatened Release of a Hazardous Substance and Whether Release Caused Plaintiffs to Incur Necessary Costs of Response

The second and third prongs of the CERCLA Section 107(a) *prima facie* case require a plaintiff to demonstrate that there has been a "release" or "threatened release" of a hazardous substance and that the release caused the plaintiff to incur necessary costs of response. Reg'l Airport Auth. v. LFG, LLC, 460 F.3d 697, 703 (6th Cir. 2006).  The portions of the Second Amended Complaint that are arguably pertinent to the present inquiry include the following:

- "The [EPA] has identified contaminants at the Site consisting of certain hazardous substances . . . ." Doc. #69 ¶ 3.

- The various Defendants deposited hazardous substances at the Site. See e.g., ¶ 27 (Waste Management); ¶ 28 (Bridgestone); ¶ 29 (Bimac); ¶ 30 (Cargill); ¶ 31 (DP&L); ¶ 33 (Monsanto).

26

- Plaintiffs entered into a settlement under the Superfund Alternative Sites program with EPA . . ., for performance of the remedial investigation and feasibility study ("RI/FS") for the Site in compliance with the National Contingency Plan. Plaintiffs have incurred and will incur costs in performance of the RI/FS including, but not limited to, costs of investigation, testing, evaluating and removal of some or all of the Contamination. Doc. #69 ¶¶ 4,5.

- Plaintiffs have incurred response costs and will continue to incur response costs in connection with the Site. These costs have been and will continue to be (i) for actions taken in response to the release or threatened release of hazardous substances at the Site . . .; (ii) necessary costs of response incurred by Plaintiffs consistent with the National Contingency Plan . . .; and (iii) in excess of Plaintiffs' equitable shares . . . . Id. ¶43.

- A release or threatened release has occurred at the Site, which has caused and will continue to cause the incurrence of response costs. Id. ¶48.

With regard to these two prongs of the CERCLA Section 107(a) *prima facie*

case, the Sixth Circuit explains as follows:

> It is clear from the text, structure, and legislative history of § 107 that the provision does not require a plaintiff to show that a particular defendant caused either the release or the incurrence of response costs in order to prove liability. First, the text of § 107 imposes no such causation requirement on its face. Rather, the text requires only that a plaintiff prove "that the defendant's hazardous substances were deposited at the site from which there was a release and that the release caused the incurrence of response costs." United States v. Alcan Aluminum Corp., 964 F.2d 252, 266 (3d Cir. 1992). Second, the structure of §107 suggests this conclusion. As the Second Circuit has observed, "interpreting section 9607(a)(1) as including a causation requirement makes superfluous the affirmative defenses provided in section 9607(b), each of which carves out from liability an exception based on causation." New York v. Shore Realty Corp., 759 F.2d 1032, 1044 (2d Cir.1985). "Finally, the legislative history supports the absence of a causation requirement, as the final version of the bill ultimately passed by Congress deleted the requirement that liability be imposed only on those who 'caused or contributed to the

27

release or threatened release' contained in the earlier version passed by the House of Representatives." Township of Brighton, 153 F.3d 307, 328 (6th Cir. 1998) (Moore, J., concurring in the result) (quotation omitted).  Moreover, other circuits have held that § 107 does not require a plaintiff to show any direct causal link between the waste each defendant sent to the site and the environmental harm.

Kalamazoo River Study Group v. Menasha Corp., 228 F.3d 648, 655-56 (6th Cir. 2000) (citing Township of Brighton, 153 F.3d at 329; Alcan Aluminum, 964 F.2d at 266; United States v. Alcan Aluminum Corp., 990 F.2d 711, 721 (2d Cir. 1993); Amoco Oil Co. v. Borden, 889 F.2d 664, 670 n.8 (5th Cir. 1989); United States v. Monsanto Co., 858 F.2d 160, 169 (4th Cir. 1988)); see also ITT Indus. v. BorgWarner, Inc., 615 F. Supp. 2d 640, 643 (W.D. Mich. 2009) ("There is no requirement that ITT prove that the Bronson Defendants caused any release.  The Sixth Circuit specifically rejected such a burden in Kalamazoo River Study Group v. Menasha Corp., 228 F.3d 648, 653 (6th Cir. 2000).").

As noted, the Sixth Circuit has determined that Section 107(a) "does not require a plaintiff to show that a particular defendant caused . . . the release [in question]." Kalamazoo River, 228 F.3d at 655 (citing United States v. Township of Brighton, 153 F.3d 307, 329 (6th Cir. 1998)).  "Rather, the text requires only that a plaintiff prove 'that the defendant's hazardous substances were deposited at the site from which there was a release and that the release caused the incurrence of response costs.'" Id. (quoting United States v. Alcan Aluminum Corp., 964 F.2d

28

252, 266 (3d Cir. 1992)).[14]  As summarized by the District Court for the Western District of Tennessee:

> Liability under § 107(a) is strict.  Under § 107(a), a plaintiff must only "prove 'that the defendant's hazardous substances were deposited at the site from which there was a release and that the release caused the incurrence of response costs.'"  There is no requirement that the substance deposited by the individual held liable is the substance that actually is released or causes the contamination.

Carrier Corp. v. Piper, 460 F. Supp. 2d 827, 834-835 (W.D. Tenn. 2006) (quoting and citing Kalamazoo River, 228 F.3d at 655).

In the present case, the Plaintiffs have adequately pled that the Defendants deposited hazardous substances at the Site.  They have further alleged that there was a "release" at the Site, in averring that the EPA has identified contaminants at the Site consisting of certain hazardous substances.  Further, the Plaintiffs adequately pled that the release "caused" them to incur necessary costs of response when they alleged that, as a result of the hazardous substances identified by the EPA as contaminants at the Site, they entered into a settlement with the EPA for performance of the RI/FS and, further, that they have incurred and will continue to incur certain costs in performance of that RI/FS.  Therefore, the

---

[14]The Defendants point to two District Court cases, from the Sixth Circuit, wherein the Courts seemingly analyzed (on summary judgment) whether the alleged release of hazardous substances caused the incurrence of response costs. Hodgins v. Carlisle Engineered Prods., 2006 U.S. Dist. LEXIS 77674, **8-9 (N.D. Ohio Oct. 16, 2006); Dartron Corp. v. Uniroyal Chem. Co., 917 F. Supp. 1173, 1180-81 (N.D. Ohio 1996).  It is this Court's understanding that Kalamazoo River is still good law, however, and this Court is bound to follow the law as outlined by the Sixth Circuit therein.

Defendants' contentions, on this point, are without merit.

### 3.    Summary of Section 107(a) Analysis

In summary, with regard to Defendant Bridgestone, the Court concludes that the Plaintiffs have pled all of the components of their Section107(a) claim with sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Therefore, Defendant Bridgestone's Motion to Dismiss (Doc. #33) is OVERRULED, with regard to the Plaintiffs' CERCLA Section 107(a) claim.

As to the "base claim" against Defendant DP&L (alleging that it disposed of hazardous substances directly at the Site), the Court concludes that the Plaintiffs have pled all of the components of their Section107(a) claim with sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Therefore, Defendant DP&L's Motion to Dismiss (Doc. #27) is OVERRULED, with regard to the Plaintiffs' CERCLA Section 107(a) base claim.  With regard to the "migration claim" against Defendant DP&L, the Court concludes that the Plaintiffs have not sufficiently pled the "intent" component of the arranger liability prong to state a claim to relief that is plausible on its face, as described above.  Therefore, Defendant DP&L's Motion to Dismiss (Doc. #27) is SUSTAINED, with regard to the Plaintiffs' CERCLA Section 107(a) migration claim.

As to the Section 107(a) claim against Defendant IRG (which consists of only a "migration claim"), the Court concludes that the Plaintiffs have not

sufficiently pled the "intent" component of the arranger liability prong to state a

claim to relief that is plausible on its face, as described above.  Therefore,

Defendant IRG's Motion to Dismiss (Doc. #35) is SUSTAINED, with regard to the

Plaintiffs' CERCLA Section 107(a) claim.[15]


  B.  <u>Contribution, under CERCLA Section 113(f)(3)(B) (Count II)</u>

  As noted above, CERCLA's Section 113 grants PRPs a right to seek

contribution.  As background to this Section, the Supreme Court explains that

> [c]ontribution is defined as the "tortfeasor's right to collect from
> others responsible for the same tort after the tortfeasor has paid more
> than his or her proportionate share, the shares being determined as a
> percentage of fault."  Nothing in § 113(f) suggests that Congress
> used the term "contribution" in anything other than this traditional
> sense.

<u>United States v. Atl. Research Corp.</u>, 551 U.S. 128, 138-39, 127 S. Ct. 2331,

168 L. Ed. 2d 28 (2007) (quoting Black's Law Dictionary 353 (8th ed. 2004)).

The contribution right that is specific to the parties in this litigation is contained in

subparagraph (f)(3)(B) of Section 113, which provides that "[a] person who has

resolved its liability to the United States or a State for some or all of a response

action or for some or all of the costs of such action in an administrative or judicially

approved settlement may seek contribution from any person who is not party to a

---

  [15]As a reminder, the only claim challenged by Defendant IRG, in its Motion to Dismiss, was the CERCLA Section 107(a) migration claim.  Therefore, this ends the Court's inquiry on IRG's Motion to Dismiss.

settlement referred to in paragraph (2)." 42 U.S.C. 9613(f)(3)(B).

In Count II of the Second Amended Complaint, the Plaintiffs aver that, in accordance with the Settlement Agreement, they "have resolved all or part of their liability to the United States for some or all of a response action or some or all of the costs of such action[,] in an administrative or judicially approved settlement" and that they are entitled to contribution from the Defendants (who are not parties to the Settlement Agreement), for past and future response costs. Doc. #69 ¶¶ 52-54. In their Motions to Dismiss, DP&L and Bridgestone present three arguments, as to why the Plaintiffs' Section 113 contribution claim should be dismissed, to wit: (1) the Plaintiffs' claim is time-barred by Section 113's 3-year statute of limitations; (2) the Plaintiffs have not yet resolved <u>any</u> of their stated liability to the United States, as is demonstrated by the language of the Settlement Agreement that is attached to the Second Amended Complaint, as Exhibit A; and (3) Section 113 is inapplicable to the Plaintiffs' claim, given that the Plaintiffs are seeking to recover <u>their own</u> costs (alleging that such claims are, instead, governed by Section 107). Doc. #27 (DP&L Mem. Spt.) at 11-15; Doc. #33 (Bridgestone Mem. Spt.) at 12-17.

In contrast, the Plaintiffs argue that the 3-year time bar does not apply to cases such as theirs. Doc. #39 at 29-30. They also point to various provisions in the Settlement Agreement that they assert demonstrate that that Agreement properly resolves at least some of their controversy with the Government. <u>Id.</u> at

32

23-28.  Finally, the Plaintiffs state that they seek to recover costs not voluntarily incurred and, thus, Section 113 is applicable to their case. Id. at 30-32.

Assuming that the Plaintiffs have alleged a valid Section 113 claim, the Court finds that the same is time barred.  Thus, it will consider the parties' statute of limitations arguments, but in order to conserve scare judicial resources, will not address either of the other two arguments presented.

Section 113's statute of limitations is found in subparagraph (g)(3).  Specific to the present litigation, that provision states that an "action for contribution for any response costs or damages" must be commenced within "3 years after . . . the date of an administrative order under section 122(g) . . . (relating to de minimis settlements) or 122(h) . . . (relating to cost recovery settlements)  . . . ." 42 U.S.C. § 9613(g)(3)(B).

As to this issue, the Defendants' argument is simple.  Since the Settlement Agreement in question became effective on August 15, 2006, the Plaintiffs were time-barred from filing the present Complaint, on May 24,2010, which was more than 3 years later.

In response, the Plaintiffs state that Section 113's 3-year time bar does not apply to the present case. Doc. #39 at 29-30.  Based on the language of that provision, they submit that the statute of limitations applies only to contribution actions arising from two distinct categories of administrative settlements, to wit: de minimis settlements (under Section 122(g)) and cost recovery settlements

(under Section 122(h)).[16] They conclude their argument by stating that since the present Settlement Agreement does not arise from either Section 122(g) or (h), it is not subject to the 3-year statute of limitations. In essence, the Plaintiffs are arguing that they are asserting a valid Section 113 claim, but that CERCLA does not provide any statute of limitations for the same.

The Sixth Circuit has rejected an argument similar to that raised by the present Plaintiffs. In RSR Corporation v. Commercial Metals Co., the Sixth Circuit began its analysis by explaining that, when enacting CERCLA, Congress appreciated the risk that "never-ending litigation might impede a 'swift and effective response to hazardous waste sites,'" and, thus, it authorized the United States and PRPs "to launch clean-up efforts first, then recover the costs from other responsible parties later -- through settlements, consent decrees and, if need be, judgments." RSR Corp, 496 F.3d 552, 555 (6th Cir. 2007) (quoting Anspec Co., Inc. v. Johnson Controls, Inc., 922 F.2d 1240, 1247 (6th Cir. 1991)). However, the Appellate Court further noted that "[t]he statutory authority of government entities and private parties to bring cost-recovery and contribution actions later . . . does not last forever." Id.

"An initial action for recovery of the costs . . . for a remedial action,"

_____

[16]Section 122(g) pertains to de minimis settlements, which "involve[] only a minor portion of the response costs at the facility concerned," while Section 122(h) pertains to cost recovery settlements involving "[t]he head of any department or agency with authority to undertake a response action under this Act" who settles a claim under Section 107. 42 U.S.C. 9622(g), (h).

for example, must be filed "within 6 years after initiation of physical
on-site construction of the remedial action," and subsequent cost
recovery actions "may be maintained at any time during the response
action, but must be commenced no later than 3 years after" its
completion. 42 U.S.C. § 9613(g)(2)(B).  A potentially responsible
party may bring a <u>contribution action</u> "during or following any civil
action" under the statute's enforcement and cost-recovery provisions,
<u>id.</u> § 9613(f)(1); <u>see</u> <u>Cooper Indus., Inc. v. Aviall Servs., Inc.</u>, 543
U.S. 157, 161, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004), <u>or after</u>
<u>resolving its liability to the United States "in an administrative</u> or
judicially approved <u>settlement</u>," 42 U.S.C. § 9613(f)(3)(B).

<u>Id.</u> (emphasis added).  As to the <u>contribution</u> actions, the Court went on to point

out that the statute provides that contribution actions for "response costs or

damages" must be filed within 3 years of, among other dates, the date of a

judicially approved settlement (as was pertinent in the <u>RSR Corporation</u> case) or

the date of an administrative order, under Section 122(g) or Section 122(h) (as is

potentially pertinent to the present litigation). <u>Id.</u> (citing 42 U.S.C. § 9613(g)(3)).

The Appellate Court then explained, generally, that the plaintiff had brought

its complaint pursuant to CERCLA Section 113(f), "the contribution provision," and

that the plaintiff's right to seek contribution arose from a consent decree, which

the plaintiff acknowledged constituted a "judicially approved settlement" for

purposes of <u>authorizing</u> such an action. <u>Id.</u> at 555-56 (emphasis in original).  With

regard to the purpose of limiting when the contribution action could be brought, the

Court went on to state that

> [W]e see no reason why [the consent decree] does not also constitute
> a "judicially approved settlement" for the purpose of limiting when
> that action may be brought -- for determining in other words when the
> right to bring that action accrues for statute-of-limitation purposes.  <u>To</u>

conclude otherwise would allow a "judicially approved settlement" to authorize a contribution action to recover the "costs" imposed by that settlement without placing any limit on when that action must be brought.

Id. at 556 (citing Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 13 (1st Cir. 2004)) (emphasis added).

The Appellate Court also discounted the plaintiff's attempt to parse out the language of Section 113(g)(3)(B), in order to characterize its consent order as something other than a "judicially approved settlement." In so doing, the Court stated that, "[t]he point of this section of the statute, as the introductory clause indicates,[17] is to establish a time bar for contribution actions for 'any response costs or damages'." Id. at 557; see also ITT Indus. v. BorgWarner, Inc., 506 F.3d 452, 459 n.3 (6th Cir. 2007) (noting, in dicta, that "[t]he statute of limitations for asserting a contribution claim under [Section 113] is three years").

Courts have generally recognized that CERCLA contains a 3-year statute of limitations period for Section 113 contribution claims, without further refining the scope of the types of contribution claims. E.g., Chitayat v. Vanderbilt Assocs., 702 F. Supp. 2d 69, 81-82 (E.D.N.Y. 2010). The Supreme Court has also indicated that the fairest reading of Section 113 is that the entirety of limitations periods for CERCLA contribution claims can be found in Section 113(g)(3). Cooper Indus. v.

_____

[17]The "introductory clause" reads as follows: "No action for contribution for any response costs or damages may be commenced more than 3 years after . . . ." 42 U.S.C. 9613(g)(3).

Aviall Servs., 543 U.S. 157, 167, 125 S. Ct. 577, 160 L. Ed. 2d 548 (2004); see

also BASF Catalysts LLC v. United States, 479 F. Supp. 2d 214, 222 (D. Mass.

2007)[18] (relying on Cooper Industries, in stating "this precedent implies that lower

courts should presume that all § 113(f) recoveries should find their statute of

limitations in CERCLA § 113(g)(3)).

The question presented to the Supreme Court, in Cooper Industries, was

whether a party may seek contribution, under CERCLA, after engaging in voluntary

cleanup.  In resolving this question (and ultimately finding the answer to be no), the

Supreme Court looked at the whole of Section 113.

> As noted above, § 113 provides two express avenues for
> contribution:  § 113(f)(1) ("during or following" specified civil actions)
> and § 113(f)(3)(B) (after an administrative or judicially approved
> settlement that resolves liability to the United States or a State).
> Section 113(g)(3) then provides two corresponding 3-year limitations
> periods for contribution actions, one beginning at the date of
> judgment, § 113(g)(3)(A), and one beginning at the date of
> settlement, § 113(g)(3)(B).  Notably absent from § 113(g)(3) is any
> provision for starting the limitations period if a judgment or settlement

---

[18]Also in support of its conclusion, the District Court, in BASF Catalysts LLC, relied on CERCLA legislative history, as follows:

> When Congress adopted the CERCLA § 113(g)(3) statute of
> limitations, the conference report noted that the section "prohibits the
> commencement of any action for contribution more than three years
> after the date of judgment in any civil action under this Act for
> recovery of costs or damages or more than three years after the date
> of entry of administrative or judicially approved settlements."

BASF Catalysts LLC, 479 F. Supp. at 224 (emphasis added by District Court) (quoting H.R. Rep. No. 99-962 at 223 (1986)).

> never occurs, as is the case with a purely voluntary cleanup.  The lack
> of such a provision supports the conclusion that, to assert a
> contribution claim under § 113(f), a party must satisfy the conditions
> of either § 113(f)(1) or § 113(f)(3)(B).

Cooper Indus., 543 U.S. at 167 (emphasis added).  As is indicated, the Supreme

Court is reasonably inferring that Congress would not have drafted Section 113

without specifying a limitations period for all possible types of allowable

contribution actions. Accord Carrier Corp. v. Piper, 460 F. Supp. 2d 827, 843

(W.D. Tenn. 2006) (concluding that "the proper statute of limitations to apply to a

contribution action pursuant to § 113(f)(3)(B) is § 113(g)(3)," and, thus, the

statute of limitations with respect to the contribution action under § 113(f)(3)(B),

which was before it, began to run at the date of the consent decree).  Thus, the

present Plaintiffs' attempt to convince this Court otherwise is unavailing.

     Because the present litigation was not commenced within 3 years of the

effective date of the Settlement Agreement, as is mandated by CERCLA

§ 113(g)(3)(B), the Defendants' Motions to Dismiss (Docs. #27, #33) are

SUSTAINED, with regard to the Plaintiffs' Section 113 claim (Count II).


     C.    Unjust Enrichment (Count III)

     As their third claim for relief, the Plaintiffs allege that by arranging for the

disposal of hazardous substances at the Site, the Defendants have caused

response costs to be incurred by the Plaintiffs. Doc. #69 ¶ 56.  Further, the

Plaintiffs aver that they have conferred, and will continue to confer, benefits on

each Defendant by paying each Defendant's share of the response costs and that

they (the Plaintiffs) have discharged the liabilities of Defendants, to the extent they

have paid such costs that are the legal obligation of the Defendants. Id. ¶ 57.

Thus, the Defendants have been and will continue to be unjustly enriched at the

expense of the Plaintiffs.

Given that the Plaintiffs' unjust enrichment claim is a state law claim, the

Court begins by looking at the Ohio common law requirements for a *prima facie*

case of unjust enrichment.  In order to recover on a claim of unjust enrichment, a

plaintiff must prove the following:

1)   the plaintiff conferred a benefit on the defendant;

2)   knowledge by the defendant of such benefit; and,

3)   the defendant retained the benefit under circumstances where it
     would be inequitable to do so without compensation.

Phillips v. Campbell, 2007 Ohio 4022, P16, 2007 Ohio App. LEXIS 3641 (Ohio 5th

App. Dist. July 27, 2007) (citing Johnson v. Microsoft Corp., 106 Ohio St. 3d

278, 287, 2005 Ohio 4985, 834 N.E.2d 791 (2005)).

In their Motions to Dismiss, Defendants DP&L and Bridgestone argue that the

Court should dismiss the unjust enrichment claim, because the claim is preempted

by CERCLA and because the Plaintiffs are under a legal duty to pay remediation

costs and are, thus, precluded from advancing an unjust enrichment claim. Doc.

#27 at 21-24; Doc. #33 at 17-20; Doc. #55 at 13-15.  In response, the Plaintiffs

argue that CERCLA does not preempt state law causes of action and that they

should be allowed to plead alternative claims. Doc. #39 at 32-35.

The Court begins its analysis by looking at the text of the applicable statutory

provision.  CERCLA Section 114 is entitled "Relationship to Other Law."  The

pertinent part of that Section reads as follows:

> (a)  Nothing in this Act shall be construed or interpreted as
> preempting any State from imposing any additional liability or
> requirements with respect to the release of hazardous substances
> within such State.
>
> (b)  Any person who receives compensation for removal costs or
> damages or claims pursuant to this Act shall be precluded from
> recovering compensation for the same removal costs or damages
> or claims pursuant to any other State or Federal law. . . .

42 U.S.C. § 9614(a), (b).  This text, then, does not proscribe the bringing of similar

state law claims (i.e., does not mandate preemption of state law causes of action).

It does, however, prohibit a plaintiff from recovering, under state law, for the same

removal costs, damages or claims that it recovers under CERCLA.  Therefore, the

Defendants' argument that CERCLA preempts the Plaintiffs' state law claim is

unfounded.[19]

------------------------------------------------------------

[19]The Defendants rely on a decision from the Northern District of Ohio, in
support of their preemption argument.  In that decision, the Court determined that
dismissal was appropriate, because the plaintiff was seeking the same damages
under CERCLA Section 107 and various state law claims. Ashtabula River Corp.
Group II v. Conrail, Inc., 549 F. Supp. 2d 981 (N.D. Ohio 2008).  In support of its
decision, the District Court stated the following:

Further, courts have recognized that CERCLA plaintiffs may pursue "alternative and legally inconsistent theories up until the point where one of the inconsistent theories prevails to the exclusion of the others." Bd. of County Comm'rs of La Plata v. Brown Group Retail, Inc., 598 F. Supp. 2d 1185 (D. Colo. 2009) (citing, among others, Huffman v. Saul Holdings Ltd. Pshp., 194 F.3d 1072, 1081 (10th Cir. Okla. 1999); United States ex rel. Roby v. Boeing Co., 184 F.R.D. 107, 112-13 (S.D. Ohio 1998) (holding the Federal Rules allow a party to plead as

---

> Where a plaintiff's set of damages recoverable under § 107 are not identical to the set of damages recoverable under state law, the causes of action are not seeking double recovery and the state law claims are not preempted. Where, however, a plaintiff's CERCLA and state law claims seek recovery of the same response costs, courts have found that CERCLA preempts the plaintiff's right to recover under the state law.

Id. at 986 (citations omitted). In support of its contention that CERCLA preempts state law when a plaintiff's CERCLA and state law claims seek recovery of the same response costs, the Court cites only one case - - Vine Street, LLC v. Keeling, 460 F. Supp. 2d 728, 757 (E.D. Tex. 2006). A close examination of Vine Street, however, indicates that the Vine Street Court first concluded that the plaintiff had prevailed on both its state law and CERCLA claims (thus undermining the Ashtabula River Court's conclusion that a court should dismiss the state law claim prior to consideration of the same). Id. at 756-57. In determining the appropriate relief for both claims, however, the Court relied on CERCLA Section 114(b) in determining that the plaintiff could not properly recover under both CERCLA and state law for the same costs, in that "Vine Street's recovery of response costs under CERCLA subsumes Vine Street's recovery under the [state law] of removal-action-maintenance costs." Id. at 757.

This Court determines that the Vine Street decision is properly grounded on the language of CERCLA Section 114, but the Ashtabula River decision is not. While Section 114 precludes a plaintiff from ultimately recovering under state law for the same costs it recovers under CERCLA, it does not preclude a plaintiff from bringing suit seeking to recover the same costs, in the first instance.

41

many separate federal statutory and common law claims as the party has, regardless of consistency, and Rule 12(b)(6) dismissal is unavailable on that basis)). Therefore, unless there is some merit to the Defendants' alternate argument that the Plaintiffs are precluded from bringing their unjust enrichment claim because they are under a legal duty to pay the remediation costs, the Defendants' Motion is without merit, as to the unjust enrichment claim.

In support of their alternative argument, the Defendants point to various District Court cases (outside of Ohio), which hold that "where the plaintiff has a legal duty to clean up waste on a contaminated site, recovery based on unjust enrichment is foreclosed." Ford Motor Co. v. Edgewood Props., 2008 U.S. Dist. LEXIS 80191, **34-35 (D.N.J. Oct. 8, 2008) (quoting In re Energy Co-op., Inc., No. 92-2392, 1995 U.S. Dist. LEXIS 7545, 1995 WL 330876, at *8 (N.D. Ill. May 30, 1995)); see also Calabrese v. McHugh, 170 F. Supp. 2d 243, 270 (D. Conn. 2001) (same) (citations omitted); Chem-Nuclear Sys., Inc. v. Arivec Chems., Inc., 978 F. Supp. 1105, 1110 (N.D. Ga. 1997) (same).

In the present case, neither party points to an Ohio case that addresses the issue presently before this Court and the Court has found none.  Therefore, this Court finds persuasive and adopts the reasoning of the decisions noted above, which conclude that a plaintiff is precluded from bringing an unjust enrichment claim if it is under a legal duty to pay remediation costs.  As noted by the District Court for the Northern District of Georgia, when deciding the same issue:

Despite this lack of direct authority [from Georgia courts], the majority of courts that have addressed the issue have rejected claims of unjust enrichment in the context of CERCLA §§ 113 and 107 litigation. Generally, these courts have concluded that when a PRP is under a legal duty to remediate a contaminated site, this remediation does not unjustly enrich other PRPs. In reaching this conclusion, several of these courts have cited § 106 of the Restatement of Restitution which provides that "a person, who incidentally to the performance of his own duty . . . has conferred a benefit upon another, is not thereby entitled to contribution."

In this case, Plaintiff cannot pursue a claim for unjust enrichment against Lockheed. Plaintiff does not dispute that . . . it remediated the BC site based on a legal duty which was created by an EPA administrative order. Therefore . . ., even assuming that Lockheed benefitted from Plaintiff's remediation, Plaintiff cannot purse an unjust enrichment claim because this benefit accrued by virtue of Plaintiff's performance of its own legal duty.

Chem-Nuclear Sys., 978 F. Supp. at 1110-11 (citing and quoting, among others,

Nielsen v. Sioux Tools, Inc., 870 F. Supp. 435, 443 (D. Conn. 1994); In re Energy

Cooperative, Inc., 1995 U.S. Dist. LEXIS 7545, 1995 WL 330876 *8 (M.D. Ill.

May 30, 1995); Ciba-Geigy Corp. v. Sandoz Ltd., 1993 U.S. Dist. LEXIS 21046,

1993 WL 668325 *8 (D.N.J. June 17, 1993); Smith Land & Improvement Corp. v.

Rapid-American Corp., 1987 U.S. Dist. LEXIS 14218, 1987 WL 56461 (M.D. Pa.

Sept. 21, 1987); CMC Heartland Partners v. General Motors Corp., 1995 U.S. Dist.

LEXIS 4949, 1995 WL 228946 *5 (N.D. Ill. April 14, 1995) (distinguishing this

seemingly contrary case, because both plaintiff and defendant had been subject to

administrative order that precipitated remediation)).

Given that the Plaintiffs have remediated and will continue to remediate the

present Site based on a legal duty that was created by the Settlement Agreement with the EPA, the Defendants' Motions to Dismiss (Docs. #27, #33) are SUSTAINED, as to the Plaintiffs' unjust enrichment claim (Count III).

      D.    <u>CERCLA Declaratory Judgment (Count IV)</u>

As their final claim for relief, the Plaintiffs aver that an actual controversy exists between the parties, within the meaning of 28 U.S.C. §2201 and CERCLA Section 113(g)(2), with respect to their respective rights and responsibilities for the response costs incurred and to be incurred, with respect to the contamination at the Site. Doc. #69 ¶ 59. Further, the Plaintiffs claim that they are entitled to a declaratory judgment on liability for response costs that will be binding in any subsequent action or actions to recover further response costs and which declare that the Defendants are liable under CERCLA Section 107(a) and/or CERCLA Section 113(f)(3)(B), for all or their proper share of response costs incurred and to be incurred by Plaintiffs with respect to the contamination at the Site, pursuant to CERCLA Section 113(g)(2) and 28 U.S.C. §§2201-2202. <u>Id.</u> ¶ 60.

In their Motions to Dismiss, DP&L and Bridgestone argue that the Court should dismiss this claim, based on their previous contentions that the Plaintiffs have failed to state valid claims for CERCLA liability under either Section 107(a) or Section 113(f)(3)(b). Doc. #27 at 24; Doc. #33 at 20. The Plaintiffs, on the other hand, argue that, based on their previous contentions, they have asserted valid

44

claims under both relevant CERCLA provisions and, thus, are entitled to an entry of declaratory judgment on the same. Doc. #39 at 36.

To the extent the Court previously determined that the Plaintiffs have adequately pled their CERCLA Section 107 claim, the Defendants' Motions (Docs. #27, #33) are OVERRULED, as they apply to dismissing the declaratory judgment claim relative to that portion of the CERCLA Section 107 claim. However, to the extent the Court previously determined that the Plaintiffs have not adequately pled their CERCLA Section 107 claim (with respect to the "migration claim" against DP&L) and with respect to the Plaintiffs' CERCLA Section 113 claim, which the Court previously dismissed, the Defendants' Motions (Docs. #27, #33) are SUSTAINED.

IV. <u>Conclusion</u>

    A.   <u>CERCLA Section 107(a) Cost Recovery Claim (Count I)</u>

With respect to the Plaintiffs' CERCLA Section 107(a) cost recovery claim (Count I) against Defendant DP&L, DP&L's Motion to Dismiss (Doc. #27) is OVERRULED, as to the Plaintiffs' "base claim," which alleges that DP&L disposed of hazardous substances directly at the Site. However, Defendant DP&L's Motion to Dismiss (Doc. #27) is SUSTAINED, as to the Plaintiffs' "migration claim," which alleges that DP&L released hazardous substances on its property adjacent to the Site and allowed these hazardous substances to migrate through the groundwater

45

to contaminate the Site.  With respect to the Plaintiffs' CERCLA Section 107(a) cost recovery claim (Count I) against Defendant Bridgestone, Bridgestone's Motion to Dismiss (Doc. #33) is OVERRULED.  With respect to the Plaintiffs' CERCLA Section 107(a) cost recovery claim (Count I) against Defendant IRG, IRG's Motion to Dismiss (Doc. #35) is SUSTAINED.

        B.     CERCLA Section 113(f)(3)(B) Contribution Claim (Count II)

With regard to the Plaintiffs' CERCLA Section 113(f)(3)(B) contribution claim (Count II), Defendant DP&L's Motion to Dismiss (Doc. #27) and Defendant Bridgestone's Motion to Dismiss (Doc. #33) are SUSTAINED.

        C.     Unjust Enrichment Claim (Count III)

With regard to the Plaintiffs' unjust enrichment claim (Count III), Defendant DP&L's Motion to Dismiss (Doc. #27) and Defendant Bridgestone's Motion to Dismiss (Doc. #33) are SUSTAINED.

        D.     Declaratory Judgment Claim (Count IV)

With regard to the Plaintiffs' declaratory judgment claim (Count IV), Defendant DP&L's Motion to Dismiss (Doc. #27) and Defendant Bridgestone's Motion to Dismiss (Doc. #33) are OVERRULED, as they pertain to that portion of the Plaintiffs' CERCLA Section 107 that survives.  As to the portion of the CERCLA

Section 107 claim that does not survive (the "migration claim" against DP&L) and the Plaintiffs' CERCLA Section 113 claim, Defendant DP&L's Motion to Dismiss (Doc. #27) and Defendant Bridgestone's Motion to Dismiss (Doc. #33) are SUSTAINED.

February 9, 2011

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record