# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| HOBART CORPORATION, et al., | : | |
| Plaintiffs, | : | Case No. 3:10cv00195 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| WASTE MANAGEMENT OF<br>OHIO, INC., et al., | : | |
| | : | |
| Defendants. | | |
| | : | |

## DECISION AND ENTRY

## I. INTRODUCTION

This CERCLA[1] case is before the Court upon Plaintiffs' Motion to Compel Discovery And/Or Opposition To Anticipated Motion To Quash Subpoena Or For Protective Order By Defendant Dayton Power & Light Co. (Doc. #104), Defendant Dayton Power & Light Co.'s (DP&L's) Motion to Quash Subpoena And Exclude Use Of Information Derived From Ex Parte Communications By Plaintiffs' Counsel With DP&L Employee (Doc. #105), DP&L's Response In Opposition To Plaintiffs' Motion To Compel (Doc. #106), and the record as a whole.

---

[1] Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§9601-9675. *See* Doc. #s 69, 71.

On March 9, 2012, the undersigned Judicial Officer held an informal telephone discovery conference pursuant S.D. Ohio Civ. R. 37.1. The conference did not resolve the present discovery dispute, which involves contact between Plaintiffs' counsel and a current DP&L employee. Since the parties seek to expeditiously move forward with discovery, further briefing is unwarranted.

## II. BACKGROUND

Plaintiffs' Second Amended Complaint asserts claims of CERCLA contribution against DP&L (and others). The claims arise from allegations of hazardous waste disposal at the South Dayton Dump and Landfill Site (the Site) in Moraine, Ohio. Plaintiffs allege, in part, "Defendant DP&L arranged for the disposal of wastes at the Site, including waste containing hazardous substances from its facilities and operation located in and around Dayton. DP&L contributed to Contamination at the Site through its disposal of wastes that included hazardous substances at the Site. . . ." (Doc. #69, ¶31). DP&L denies this allegation. (Doc. #74, ¶32).

The parties' present dispute concerns Plaintiffs' desire (and subpoena) to depose a current DP&L employee Charles L. Fields. DP&L opposes the proposed deposition as a sanction for ethical misconduct committed, DP&L asserts, by one of Plaintiffs' attorneys, Leslie G. Wolfe, Esq. DP&L contends that attorney Wolfe violated Rule 4.2 of the Ohio Rule of Professional Conduct by contacting and communicating ex parte with Mr. Fields – a current DP&L employee – about factual matters at issue in this case. Plaintiffs perceive no

ethical violation and seek to compel Mr. Fields' deposition.

Remarkably, Mr. Fields has been a DP&L employee since 1962.  (Doc. #105, Exhibit A).  His present job title is "AC Network Splicer 2," *id*., apparently in DP&L's electrical construction department.  In the past, DP&L employed him as a truck driver.

DP&L relies on Mr. Fields' affidavit.  Mr. Fields states that a former DP&L employee, Jim Tharpe, phoned him in early 2012.  Mr. Fields had known Mr. Tharpe when they both worked at DP&L.  Mr. Tharpe told Mr. Fields about the present case and predicted that Mr. Fields would probably receive a call from attorney Wolfe.  Mr. Fields continues:

> 7. In early 2007, after my telephone conversation with Mr. Tharpe, I received two telephone calls from Leslie Wolfe, who identified herself as an attorney representing parties in a lawsuit against DP&L involving the clean up of the South Dayton Dump.
>
> 8. In the first telephone call with Ms. Wolfe, she introduced herself and asked if she could call me back to discuss my personal experiences with the South Dayton Dump. I indicated that she could call me back.  During the first call, Ms. Wolfe did not ask me any specific questions about the South Dayton Dump.  I indicated that she could call me back.  During this first call, Ms. Wolfe did not ask me any specific questions about the South Dayton Dump.
>
> 9. In second telephone call with Ms. Wolfe, she asked me if I was an employee of DP&L, and I indicated that I was still employed at DP&L.  I do not recall Ms. Wolfe asking me whether I was represented by legal counsel.

(Doc. #105, Exhibit A).  Plaintiffs, presumably through attorney Wolfe, represent in their Brief, "One of the attorneys for Plaintiffs contacted Mr. Fields, identified herself as counsel for Plaintiffs in this action, and asked whether Mr. Fields was represented and, if not, whether he consent[ed] to speak to her concerning his past duties as a truck driver for DP&L.  Mr. Fields confirmed that he was not represented by counsel and agreed to answer

3

questions about his activities as a truck driver for DP&L." (Doc. #104, PageID at 980).

Returning to Mr. Fields' affidavit, he explains:

10. During the second telephone call with Ms. Wolfe, she asked me questions about my experiences and knowledge of the South Dayton Dump, including whether I ever hauled any fly ash or other waste to the South Dayton Dump when I worked at DP&L's Longworth Steam Station facility in the 1960's. I answered Ms. Wolfe's questions.

11. During the second telephone call with Ms. Wolfe, she told me that she would have to issue a subpoena to me . . . .

(Doc. #105, PageID at 1022-23). A subpoena followed in early February 2012.

In late February 2012, after initial scheduling hiccups, DP&L's counsel agreed to proceed with Mr. Fields deposition (except for its location). The parties agreed to proceed with the deposition on March 13, 2012. (Doc. #104, PageID at 990).

The current disagreement began with a letter dated March 6, 2012. DP&L's counsel objected "to the subpoena served upon its employee, and our client, Charles Fields." *Id*. at 997. DP&L's counsel also wrote, "The purpose of this objection is to provide notice that we intend to seek to suspend Mr. Field[s'] deposition in order to pursue appropriate remedies for a potential violation of Rule. 4.2 of the Ohio Rules of Professional Conduct by Plaintiffs' counsel. . . ." *Id.* Additionally, DP&L's counsel invited Plaintiffs' counsel to jointly present the matter to the Court in order to seek its guidance as to the most efficient mode of adjudication. . . ." *Id*. The ensuing disagreement led to the informal telephone discovery conference (referenced above), and the presently pending motions.

**III.    DISCUSSION**

The Ohio Supreme Court's Rules of Professional Conduct apply in this case. *See* Rule IV(B), Model Federal Rules of Disciplinary Enforcement (adopted by this Court and attached to the S.D. Ohio Civil Rules); *see also Mezibov v. Allen*, 411 F.3d 712, 719 n.4 (6th Cir. 2005); *Wasmer v. Ohio Department of Rehab & Corrs.*, 2007 WL 593564 at *2 (S.D. Ohio, Feb. 21, 2007)(Kemp, M.J.). The pertinent Ohio Rule of Professional Conduct states – with italics in original:

> **RULE 4.2: COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL**
>
> In representing a client, a lawyer shall not communicate about the representation with a person the lawyer *knows* to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

The main Rule 4.2 issue in the parties' present dispute concerns whether attorney Wolfe knew Mr. Fields was represented by DP&L's attorneys when she communicated with him ex parte.

"Counsel representing an interest adverse to a corporation may communicate without the consent of a corporation's lawyer with certain current employees and former employees of the corporation, even when corporate counsel asserts a blanket representation of the corporation and all its current and former employees." Ohio Supreme Ct. Bd of Grievances and Discipline, Opin. No. 2005-3, 2005 WL 375343 at *4 (Feb. 4, 2005)(copy attached to Doc. #104); *see Paulson v. Plainfield Trucking, Inc.*, 210 F.R.D. 654, 657-58 (D. Minn.

2002)(rejecting total ban on ex parte communications with an organization's current employees). Comment 7 following Rule 4.2 sheds light on how and when such knowledge arises. Comment 7 explains in part (emphasis added):

> In the case of a represented organization, the rule prohibits communications with a constituent of the organization, who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter **or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil . . . liability. . . .**

As to the purpose of Rule 4.2, *Wasmer v. Ohio Dept. Of Rehabilitation and Corrections* explains:

> As the courts have consistently held, the purpose of a prohibition against ex parte communications such as that embodies in Rule 4.2 is to protect an organization from improper disclosures of attorney-client communications or untoward intrusions into the attorney-client relationship in the context of an organization's ability to prosecute and defend litigation. It is not designed to protect an organization against disclosure of facts which may be prejudicial to its litigation position. . . . "[T]he purposes of the rule are best served when it prohibits communication with those employees closely identified with the organization in the dispute . . . . those employees empowered to make litigation decisions, and those employees whose acts or omissions are at issue in the case."

2007 WL 593564 at *4 (S.D. Ohio, Feb. 21, 2007) (Kemp, M.J.)(internal citations omitted

\* \* \*

Plaintiffs point out that during the Wolfe/Fields communications, Mr. Fields indicated that "he had no supervisory or managerial responsibilities at DP&L." (Doc. #104, PageID at 981). DP&L does not specifically assert that Mr. Fields has ever held supervisory or managerial duties while employed by DP&L. The record also lacks probative evidence

6

indicating that Mr. Fields falls within the initial groups of current employees comment 7 describes. He was not (1) a supervisor, director, or DP&L constituent who regularly consulted with DP&L's lawyers concerning this case, or (2) a DP&L constituent holding the authority to obligate DP&L in this case.

The parties' dispute thus boils down to whether attorney Wolfe violated Rule 4.2 by communicating ex parte with Mr. Fields because he was a DP&L constituent "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil . . . liability."

DP&L argues that attorney Wolfe's ex parte contact with Mr. Fields violated Rule 4.2 because he was such a person – again, a constituent "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil . . . liability." *Id*. at 1012. DP&L emphasizes that Mr. Fields was not an observer to potentially hazardous waste dumping at the Site; he was an actor – a DP&L-employed truck driver – who recalls driving DP&L's fly ash to the Site. *Id*.

Plaintiffs contend that Rule 4.2 did not prohibit attorney Wolfe's ex parte contact with Mr. Fields because his factual recollections of hauling waste to the Site cannot be imputed to DP&L. *Id*. at 983. They assert that Mr. Fields "made no statement which could be offered against DP&L as an admission. He was strictly a truck driver with factual information regarding the delivery of materials to the South Dayton Dump Site." *Id*. at 984 (footnote omitted).

Plaintiffs' contentions overlook or minimize the impact Mr. Fields' potential

7

testimony might have on DP&L's liability. His potential testimony – if fully credited and based on the present record – would reveal that he drove DP&L's fly ash and other waste materials to the South Dayton Site for disposal during the 1960s. *See* Doc. #105, Exh. C, PageID at 1030; *see also* Doc. #104, PageID at 980. Such testimony would tend to support Plaintiffs' allegations, in their Second Amended Complaint, that "DP&L contributed to Contamination at the Site through its disposal of wastes that included hazardous substances at the Site" (Doc. #69, ¶31); and "DPL was a regular customer at the Site, and had its own . . . access to the Site for disposal of waste materials, including wastes containing hazardous substances," *id*., ¶32. Such evidence could likewise be offered to support Plaintiffs' claims that DP&L, together with other Defendants, is liable under theories of CERCLA contribution. *See id.*, PageID at 765-67. In other words, DP&L is indubitably correct to assert that Plaintiffs "hope to impute his [Mr. Fields'] acts to DP&L in order to establish the central issue in this case: Whether DP&L disposed of hazardous substances in the Dump [Site]." (Doc. #105, Page ID at 1004). Indeed, Mr. Fields' affidavit places him within the group of current employees Rule 4.2, comment 7 shields from ex parte communications – those "whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability."

Plaintiffs contend, citing *Paulson v. Plainfield Trucking, Inc*., 210 F.R.D. 654, 657-58 (D. Minn. 2002), "Rule 4.2 clearly permits *ex parte* interviews of current employees who are 'mere witnesses' to an event for which the organization is being sued." (Doc. #104, PageID at 984). But, based on the present record, Mr. Fields was more than an observer of alleged

disposal of hazardous waste by DP&L at the Site. He participated in the alleged hazardous disposal, or under attorney Wolfe's brief description, he "formerly drove DP&L's fly ash from several of its power generating stations to the South Dayton Dump site." (Doc. #105, Exh. C at 1030 (counsel's Feb. 12, 2012 email)). To this extent, *Paulson's* "mere witness" language does not apply to Mr. Fields.

Although the above points towards the conclusion that attorney Wolfe ran aground on Rule 4.2 when she spoke ex parte to Mr. Fields, the issue of whether attorney Wolfe violated Rule 4.2 by contacting and speaking ex parte with Mr. Fields remains a close question. Too much remains unclear. The record can be reasonably read as indicating that attorney Wolfe did not have sufficient evidence to know with certainty that Mr. Fields was involved with disposal of hazardous waster materials at the Site until she spoke with him. Before that time, her information about Mr. Fields derived from only one other source – Mr. Tharpe. The record is presently silent about the source of Mr. Tharpe's information about Mr. Fields. Was Mr. Tharpe reporting his own personal knowledge about Mr. Fields' activities? Was he reporting what Mr. Fields, or someone else, had told him about Mr. Fields' activities? Mr. Fields's affidavit does not address these questions. And he provides scant information about the extensiveness of attorney Wolfe's second conversation with him. He merely explains that attorney Wolfe asked him "questions about [his] experiences and knowledge of the South Dayton Dump, including whether [he] ever hauled fly ash or other waste to the South Dayton Dump when I worked at DP&L's Longworth Steam Station facility in the 1960's. [He] answered Ms. Wolfe's questions." (Doc. #105, Exh. A, ¶10). Did she ask two

9

questions, ten questions, fifty questions? Did she probe the extent of Mr. Fields' purported activities or personal knowledge? Or, did she merely confirm that Mr. Fields is a current DP&L employee "whose acts or omissions are at issue in the case," *Wasmer*, 2007 WL 593564 at *4, and once learning this, did she immediately terminate her questions and seek to depose him with DP&L's counsel? The record at present is simply inadequate to answer such questions with accuracy.

And these questions are significant for three reasons: First, Rule 4.2's purpose of preventing "untoward intrusions into the attorney-client relationship in the context of an organization's ability to prosecute and defend litigation," *Wasmer*, 2007 WL 593564 at *4, is tempered by the warning that Rule 4.2 "is not designed to protect an organization against disclosure of facts which may be prejudicial to its litigation position." *Id.*; *see Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77, 82 ("It must be recalled that RPC 4.2 is an *ethical* rule, not a rule through which corporations gain the ability to control the flow of information to opposing parties." (italics in original) (discussing same "may be imputed" aspect of Rule 4.2 at issue in the instant case)). Second, Plaintiffs assert that DP&L "failed to provide Plaintiffs with any discovery concerning its arrangements for the disposal of hazardous substances at the South Dayton Site . . . ." (Doc. #104, PageID at 980). The record today – it must be stressed – contains no specific information or arguments by counsel about this. At best for DP&L, it might not excuse a violation of Rule 4.2. At best for Plaintiff, it might justify attorney Wolfe's effort to confirm ex parte Mr. Fields' status as a witness worth deposing before revealing that they know about him to DP&L. Again, however, the record

10

is not adequate to analyze which party is due its best result.

Regardless of how any or all of the above matters play out in the present case, the record does not support the issuance of the protective order DPL seeks. Even assuming, arguendo, that attorney Wolfe violated Rule 4.2 by communicating ex parte with Mr. Fields, the appropriate sanction should not preclude his deposition. DP&L argues:

> Here, quashing the subpoena, excluding evidence and forbidding any use of the information obtained from ex parte interviews is warranted. Unlike *Summers, Wasmer*, and *Curatola*, the violations here were willful, repeated, and unremedied. Counsel failed to avail themselves of reasonable alternatives to direct contact, and failed to terminate the interview once Mr. Fields confirmed that he was a current employee of DP&L. . . .

(Doc. #105, PageID at 1019). Rule 4.2, however, did not require attorney Welch to stop her ex parte communication with Mr. Fields once he confirmed his status a current DP&L employee. Both the plain language of Rule 4.2 and comment 7 do not impose a blanket prohibition against all ex parte communications with current DP&L employees. *See* Ohio Supreme Ct. Bd of Grievances and Discipline, Opin. No. 2005-3, 2005 WL 375343 at *4 (Feb. 4, 2005)(copy attached to Doc. #104); *see Paulson*, 210 F.R.D. at 657-58. The record, moreover, is not so gloomy as DP&L depicts. Mr. Fields' affidavit lacks enough detail to establish that attorney Wolfe engaged in repeated violations of Rule 4.2. There is one ex parte communication at issue. A willful violation is hard to see if attorney Wolfe terminated her communication when Mr. Fields confirmed his status as a DP&L truck driver who participated in disposing of hazardous waste materials at the Site.

In the end, whatever sanction that might eventually prove appropriate – including,

perhaps, excluding Mr. Fields' testimony from trial, *see Curley*, 134 F.R.D. at 82 – the present record does not support sanctioning Plaintiffs by stopping counsel from deposing Mr. Fields or excluding information gained from attorney Wolfe's ex parte communications with him.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiffs' Motion to Compel Discovery (Doc. #104) is GRANTED; and

2. Defendant Dayton Power & Light Co.'s (DP&L's) Motion to Quash Subpoena And Exclude Use Of Information Derived From Ex Parte Communications By Plaintiffs' Counsel With DP&L Employee (Doc. #105) is DENIED.

March 23, 2012

                 s/Sharon L. Ovington
                 Sharon L. Ovington
               United States Magistrate Judge