IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOBART CORPORATION, *et al.*,      :

        Plaintiffs,

    v.      :      Case No. 3:10-cv-195

WASTE MANAGEMENT OF      :      JUDGE WALTER H. RICE
OHIO, INC., *et al.*,

        Defendants      :

_____

HOBART CORPORATION, *et al.*,      :

        Plaintiffs,

    v.      :      Case No. 3:12-cv-213

COCA-COLA ENTERPRISES,      :      JUDGE WALTER H. RICE
INC., *et al.*,

        Defendants      :

DECISION AND ENTRY SUSTAINING DEFENDANT DAYTON POWER
& LIGHT'S MOTION FOR SUMMARY JUDGMENT (DOC. #121 IN
CASE NO. 3:10-CV-195); SUSTAINING DEFENDANT CARGILL, INC.'S
MOTION FOR SUMMARY JUDGMENT (DOC. #139 IN CASE NO.
3:10-CV-195); SUSTAINING DEFENDANTS' MOTION TO DISMISS
(DOC. #12 IN CASE NO. 3:12-CV-213); OVERRULING PLAINTIFFS'
MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT (DOC.
#124 IN CASE NO. 3:10-CV-195); DISMISSING AS MOOT ALL
COUNTERCLAIMS AND CROSSCLAIMS FILED IN CASE NO. 3:10-CV-
195; OVERRULING AS MOOT DEFENDANT'S OBJECTION TO
MAGISTRATE JUDGE OVINGTON'S MARCH 23, 2012, DECISION
AND ENTRY ON PLAINTIFFS' MOTION TO COMPEL AND
DEFENDANT'S MOTION TO QUASH (DOC. #109 IN CASE NO. 3:10-
CV-195); OVERRULING AS MOOT DEFENDANTS' MOTION TO STAY
DISCOVERY (DOC. #122 IN CASE NO. 3:10-CV-195), AND
OVERRULING AS MOOT PLAINTIFFS' MOTION TO MODIFY

SCHEDULING ORDER (DOC. #127 IN CASE NO. 3:10-CV-195); JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFFS IN CASES 3:10-CV-195 AND 3:12-CV-213; TERMINATION ENTRY

---

In each of the above-captioned cases, Plaintiffs Hobart Corporation, Kelsey-Hayes Company and NCR Corporation seek to recover certain costs incurred in connection with a remedial investigation and feasibility study related to environmental hazards at the South Dayton Dump and Landfill Site.

This matter is currently before the Court on several pending dispositive motions: (1) Defendant Dayton Power & Light Company's motion for summary judgment (Doc. #121 in Case No. 3:10-cv-195); (2) Defendant Cargill, Inc.'s motion for summary judgment (Doc. #139 in Case No. 3:10-cv-195); and (3) Defendants' motion to dismiss (Doc. #12 in Case No. 3:12-cv-213).

The following non-dispositive matters are also pending: (1) Defendant Dayton Power & Light Company's objections to Magistrate Judge Ovington's March 23, 2012, Decision and Entry granting Plaintiffs' motion to compel discovery and denying Defendant's motion to quash subpoena (Doc. #109 in Case No. 3:10-cv-195); (2) Defendant Dayton Power & Light Company's motion to stay discovery (Doc. #122 in Case No. 3:10-cv-195); and (3) Plaintiffs' motion to modify the scheduling order (Doc. #127 in Case No. 3:10-cv-195).

For the reasons set forth below, the Court SUSTAINS Defendants' dispositive motions, DISMISSES all pending counterclaims and cross-claims, and OVERRULES the remaining matters AS MOOT.


I.      **Background and Procedural History**

The South Dayton Dump and Landfill Site (the "Site"), located in Moraine, Ohio, is contaminated with several hazardous substances.  The United States Environmental Protection Agency ("EPA") has proposed listing the Site on the National Priorities List.  Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, Plaintiffs were identified as potentially responsible parties ("PRPs") because they either generated the hazardous substances found at the Site, owned or operated the Site or facility when hazardous substances were disposed of there, or arranged for disposal or transport for disposal of hazardous substances at the Site.  *See generally* 42 U.S.C. §§ 9604, 9607, and 9622.

In 2006, Plaintiffs and the EPA entered into an "Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study" ("ASAOC").  This settlement agreement became effective on August 15, 2006.


A.      **ASAOC**

Pursuant to the ASAOC, Plaintiffs agreed to conduct a remedial investigation and feasibility study ("RI/FS") for the Site.  Stated objectives included the

3

determination of the nature and extent of contamination and any current or potential threats to the public health, welfare, or the environment, the identification and evaluation of remedial alternatives, and the recovery of response and oversight costs incurred by the EPA with respect to the ASAOC.  Ex. A to Compl., ¶ 9.

In exchange, the EPA agreed not to sue or take administrative action against Plaintiffs for the "Work" that was the subject of the ASAOC or for "Future Response Costs."  Ex. A to Compl., ¶ 82.[1]  The parties agreed that the "Settlement Agreement constitute[d] an administrative settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2)," and that Plaintiffs were therefore entitled to protection from contribution actions for matters addressed therein.  They also agreed that the Settlement Agreement constituted "an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9113(f)(3)(B)," pursuant to which Plaintiffs "have, as of the Effective Date, resolved their liability to the United States for the Work, and Future Response Costs."  The ASAOC did not prevent the parties from asserting claims for indemnification, contribution, or cost recovery against others who were not parties to it.  Ex. A to Compl., ¶ 96.

---

[1]  The ASAOC defines "the Work" as "all activities Respondents are required to perform under this Settlement Agreement."  "Future Response Costs" are defined as all costs incurred by the United States in implementing, overseeing, and enforcing the Settlement Agreement.  Ex. A to Compl. ¶ 11(i) and (x).

**B.    *Hobart I*  (Case No. 3:10-cv-195)**

On May 24, 2010, Plaintiffs filed suit against numerous other PRPs, including Waste Management of Ohio, Inc. ("Waste Management"), The Bimac Corporation, Bridgestone Americas Tire Operations, LLC ("Bridgestone"), Cargill, Inc., The Dayton Power & Light Company ("DP&L"), Monsanto Company, Valley Asphalt Corporation, and IRG Dayton I, LLC ("IRG").  Plaintiffs asserted four causes of action related to the RI/FS: (1) cost recovery under CERCLA § 107(a); (2) contribution under CERCLA § 113(f)(3)(B); (3) unjust enrichment; and (4) declaratory judgment.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants DP&L, Bridgestone, and IRG filed motions to dismiss for failure to state a claim upon which relief can be granted.  On February 10, 2011, the Court issued a Decision and Entry ruling on those motions.  Doc. #71.  The Court dismissed in part the §107(a) cost recovery claim asserted in Count 1.  To the extent Plaintiffs alleged that Defendants disposed of hazardous substances directly at the Site, the allegations were sufficient to state a claim under § 107(a); however, to the extent Plaintiffs alleged that Defendants released hazardous substances on property adjacent to the Site and allowed those substances to migrate through the groundwater to contaminate the Site, Plaintiffs had failed to state a claim upon which relief could be granted.

The Court dismissed Count 2 in its entirety, finding that Plaintiffs' contribution claims under § 113(f) of CERCLA were not filed within the applicable

5

three-year statute of limitations and were therefore time-barred.  The Court also dismissed Count 3 in its entirety, holding that because Plaintiffs had a legal duty to pay remediation costs, they were precluded from pursuing a claim for unjust enrichment.  As to Count 4, which sought declaratory judgment concerning the parties' rights and responsibilities under CERCLA for the response costs incurred by Plaintiffs, the Court sustained the motion to dismiss to the same extent it had sustained the motion to dismiss the substantive claims under §§ 107(a) and 113(f).

On March 23, 2012, Magistrate Judge Ovington issued a Decision and Entry granting Plaintiffs' motion to compel discovery, and denying Defendant DP&L's motion to quash a subpoena and to exclude the use of information derived from *ex parte* communications by Plaintiffs' counsel with a DP&L employee.  Doc. #107. DP&L filed an objection to the Magistrate Judge's order, Doc. #109, and the Magistrate Judge stayed the Decision and Entry pending resolution of that objection, Doc. #115.

On June 21, 2012, Defendant DP&L filed a motion for summary judgment on the remaining portion of Plaintiffs' § 107(a) claim and related request for declaratory judgment.  Doc. #121.  Defendants Waste Management, Bridgestone, and Cargill joined in that motion.  Docs. #125, 126, 140.  Defendants argue that §§ 107(a) and 113(f) of CERCLA are mutually exclusive, and that, because Plaintiffs entered into an administrative settlement under § 113(f)(3)(B) of CERCLA, resolving some of their liability to the United States, Plaintiffs were

6

limited to a § 113(f) contribution claim.  Defendants maintain that Plaintiffs are barred, as a matter of law, from pursuing a cost recovery claim under § 107(a).[2]

DP&L also moved to stay discovery pending a decision on the motion for summary judgment, Doc. #122, and Plaintiffs moved to modify the scheduling order, Doc. #127.  On June 29, 2012, Plaintiffs moved for leave to file a third amended complaint, seeking to add newly-discovered defendants, a theory of owner/operator liability against DP&L, and allegations concerning Waste Management's successor liability.   Doc. #124.

On August 13, 2012, Defendant Cargill filed a separate motion for summary judgment based, in part, on the same grounds previously asserted by the other Defendants.  Doc. #139.  These motions are all fully briefed and ripe for decision.


C.  *Hobart II* **(Case No. 3:12-cv-213)**

On June 29, 2012, Plaintiffs filed a second lawsuit arising out of the same facts, and asserting the same four causes of action asserted in *Hobart I*.[3]

---

[2]  DP&L notes that the subject matter of Plaintiffs' claims relates only to costs incurred in connection with the RI/FS.  Actual remediation costs have not yet been incurred, and dismissal of Plaintiffs' current claims will not prevent Plaintiffs from attempting to recover those remediation costs at a later date.

[3] During a conference call held on August 30, 2012, the Court discussed the possibility of consolidating *Hobart I* with *Hobart II*.  Sherwin-Williams objected to consolidation because of a conflict of interest.  The Court agreed to resolve the pending dispositive motions prior to deciding whether the cases should be consolidated.

Defendants named in the second suit include Coca-Cola Enterprises Inc., DAP

Products Inc., GlaxoSmithKline, LLC, and The Sherwin-Williams Company.

On August 15, 2012, these defendants filed a motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Doc. #12.  They note that, in *Hobart I*,

the Court previously dismissed many of the claims asserted.  They further argue

that the remaining claims should be dismissed for the same reason asserted in the

summary judgment motions filed by the defendants in *Hobart I*, namely that a PRP

with a § 113(f) contribution claim cannot also seek cost recovery under § 107(a).


## II.    Dayton Power & Light Company's Motion for Summary Judgment (Doc. #121) (*Hobart I*)

Pursuant to Federal Rule of Civil Procedure 56(a), Defendant DP&L has

moved for summary judgment on Plaintiffs' remaining claim for cost recovery under

§ 107(a) of CERCLA and the related claim for declaratory judgment.  The motion is

joined by Defendants Waste Management, Bridgestone, and Cargill.


### A.    Standard of Review/Timeliness

Summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  Plaintiffs correctly note that DP&L's motion

for summary judgment is based solely on a legal issue, *i.e.*, whether the remedies

provided in §§ 107(a) and 113(f) of CERCLA are mutually exclusive.  Plaintiffs

argue that because the motion for summary judgment involves purely a legal issue,

8

it should be deemed an untimely attempt to file a second motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

True, the legal arguments raised by DP&L could have been presented in the context of a 12(b)(6) motion. However, nothing in the Federal Rules of Civil Procedure prohibits a party from moving for summary judgment based solely on a legal issue. So long as there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is properly granted. Fed. R. Civ. P. 56(a). Here, the court can reach the dispositive legal issue without having to resolve any material factual disputes. Moreover, a motion for summary judgment may be filed "anytime until 30 days after the close of all discovery." Fed. R. Civ. 56(b). Since discovery in this case is ongoing, Defendants' motion was timely filed.

### B. Analysis

#### 1. Relevant Law:  §§ 107(a) and  113(f) of CERCLA

CERCLA "facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response action to the parties responsible for releasing hazardous substances." *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 456 (6th Cir. 2007). Persons who incur such response costs may be able to recoup them from other potentially responsible parties ("PRPs") through a "cost recovery" action under § 107(a) of CERCLA, or a "contribution" action under § 113(f) of CERCLA.

9

Section 107(a)(4) makes PRPs strictly liable for "all costs of removal or remedial action incurred by the United States," 42 U.S.C. § 9607(a)(4)(A), and for "any other necessary costs of response incurred by any other person consistent with the national contingency plan," 42 U.S.C. § 9607(a)(4)(B).  Liability under § 107(a) is joint and several.  Prior to 1986, courts read § 107(a)(4)(B) to also create an implied private right of action for contribution for PRPs who were sued under § 107(a) and had to pay more than their fair share of response costs. *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 348 (6th Cir. 1998).

Then, as part of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Congress enacted § 113(f), creating an express private right of contribution in two situations.  *Id.*  First, a person may "seek contribution from any other person who is liable or potentially liable under section 9607(a) . . . , during or following any civil action under section 9606 . . . or under section 9607(a)."  42 U.S.C. § 9613(f)(1).  Second, a person "who has resolved its liability to the United States . . . for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party" to the settlement agreement.  42 U.S.C. § 9613(f)(3)(B).  A party who has resolved its liability to the government in an administrative or judicially approved settlement "shall not be liable for claims for contribution regarding matters addressed in the settlement."  42 U.S.C. § 9613 (f)(2).

10

Generally speaking, actions for contribution are subject to a three-year statute of limitations, while remedial cost recovery actions are subject to a six-year statute of limitations. 42 U.S.C. § 9613(g)(2)-(3).

In *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007), the Supreme Court explained that § 107(a) and § 113(f) "provide two 'clearly distinct' remedies." *Id.* at 138 (quoting *Aviall Servs. Inc. v. Cooper Indus. Inc.*, 543 U.S. 157, 163 n.3 (2004)). "[T]he appropriateness of a § 107(a) cost recovery or § 113(f) contribution action varies depending on the circumstances leading up to the action." *ITT Industries*, 506 F.3d at 458.

PRPs who voluntarily fund and execute a cleanup action themselves, without any administrative or judicial involvement, have "incurred" their own response costs and may bring a "cost recovery" action under § 107(a). *Atlantic Research*, 551 U.S. at 139. But when a PRP pays to satisfy a settlement agreement or a court judgment, it does not "incur" its own response costs of response, and therefore cannot recover under § 107(a). In this situation, the PRP, who is reimbursing others, must instead seek contribution under § 113(f). It "cannot simultaneously seek to recover the same expenses under § 107(a)." *Id.*[4]

---

[4] As explained in *ITT Industries*, "[t]o maintain the vitality of § 113(f), . . . PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f)." 506 F.3d at 458 (citing *Atlantic Research*, 551 U.S. at 139).

The Supreme Court acknowledged a possible overlap between the remedies, and left open the question of whether a  PRP who is compelled to pay response costs pursuant to a consent decree following a suit under §§ 106 or 107(a) may recover those costs under § 107(a), § 113, or both.  The Court noted that "[i]n such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party."  551 U.S. at 139 n.6.

Appellate courts that have subsequently considered this question have determined that PRPs who are compelled to pay response costs pursuant to an administrative settlement or a consent decree are limited to a contribution action under § 113(f).  In *Morrison Enterprises, LLC v. Dravo Corp.*, 638 F.3d 594, 603-04 (8th Cir. 2011), the court held that § 113 provides "the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under §§ 106 or 107."

In *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1236 (11th Cir. 2012), the court explained that "[i]f a party subject to a consent decree could simply repackage its § 113(f) claim for contribution as one for recovery under § 107(a), then the structure of CERCLA remedies would be completely undermined," and parties could circumvent § 113(f)'s shorter statute of limitations.  Likewise, in *Niagara Mohawk Power Corp. v. Chevron USA, Inc.*, 596 F.3d 112, 128 (2d Cir. 2010), the court held that allowing such plaintiffs to proceed under § 107(a) "would in effect nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 113."

Notably, "*Atlantic Research* did not overrule decisions holding that claims for costs incurred in performing a cleanup pursuant to a judicial or administrative settlement are limited to a contribution action under § 113(f)." *ITT Indus., Inc. v. BorgWarner, Inc.*, 615 F. Supp. 2d 640, 647 (W.D. Mich. 2009) (on remand). In *Bernstein v. Bankert*, -- F.3d --, 2012 WL 6601218, at *11 (7th Cir. Dec. 19, 2012), the Seventh Circuit recently reiterated that "a plaintiff is limited to a contribution remedy when one is available." The salient question is whether a party has resolved its liability to the government "for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." 42 U.S.C. § 9613(f)(3)(B). If the party has resolved its liability in such a fashion and seeks to recoup response costs from other PRPs, a contribution claim under § 113(f)(3)(B) is the only possible avenue of recovery. A cost recovery action under § 107(a) is not available.

### 2. Application

The dispositive question in this case, then, is whether the ASAOC constitutes an "administrative settlement" for purposes of §113(f)(3)(B). If it does, then a contribution action under § 113(f) was the exclusive remedy available to Plaintiffs. As previously noted, the Court has previously dismissed Plaintiffs' § 113(f) contribution claim as time-barred since it was filed outside the three-year statute of limitations set forth in 42 U.S.C. § 9613(g)(3).[5]

_____

[5] The Court declines Plaintiffs' invitation to revisit this ruling. The cases cited by Plaintiffs in their response to the motion to dismiss in Case No. 3:12-cv-213, Doc.

Plaintiffs make several arguments in support of their claim that a cost recovery action under § 107(a), with its longer statute of limitations, remains a viable option. For the reasons set forth below, however, the Court finds that the ASAOC was, in fact, an administrative settlement for purposes of § 113(f)(3)(B), and Plaintiffs were therefore limited to a contribution action under § 113(f). Accordingly, Plaintiffs cannot proceed on their cost recovery action under § 107(a) or their accompanying request for declaratory relief.

### a) Express Terms of ASAOC

Section XXIII of the ASAOC is entitled "Contribution." It reads in relevant part as follows:

> 96. a. The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that Respondents are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for "matters addressed" in this Settlement Agreement. The "matters addressed" in this Settlement Agreement are the Work, and Future Response Costs.
>
> b. The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section

---

#23, concerning this issue, are inapposite. *American Premier Underwriters, Inc. v. Gen. Elec. Co.*, No. 1:05-cv-437, 2012 WL 1104805 (S.D. Ohio March 31, 2012), and *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433 (6th Cir. 2004), both involved *unilateral* administrative orders, which, by their very nature, cannot be construed as "settlements." In contrast, as explained more fully herein, the ASAOC in this case is an "administrative settlement" that resolved some of Plaintiffs' liability for response costs. As such, Plaintiffs had a contribution claim under § 113(f)(3)(B), rendering inapplicable the statute of limitations relevant to § 107(a) cost recovery actions.

113(f)(3)(B) of CERCLA, 42 U.S.C. §9113(f)(3)(B) [sic],
pursuant to which Respondents have, as of the Effective Date,
resolved their liability to the United States for the Work, and
Future Response Costs.

ASAOC at ¶96.

Despite their best efforts to distance themselves, Plaintiffs cannot escape the unambiguous language of paragraph 96b. They expressly agreed that, as of the Effective Date of the ASAOC, *i.e.*, August 15, 2006, they resolved their liability to the United States for "the Work" and "Future Response Costs." Plaintiffs also expressly agreed that the Settlement Agreement was an "administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA."[6]

Accordingly, because Plaintiffs have "resolved [their] liability to the United States . . . for some or all of a response action or for some or all of the costs of such action in an administrative . . . settlement," 42 U.S.C. § 9613(f)(3)(B), they were limited to a contribution action under § 113(f), but failed to file their claim in a timely manner. They cannot now circumvent that statute of limitations through a cost recovery action under § 107(a).

_____

[6] As DP&L notes, the EPA and the Department of Justice purposely used this particular language, and called the document an "Administrative Settlement Agreement and Order on Consent," to make it very clear that the settling PRPs had resolved their liability to the government within the meaning of § 113(f)(3)(B) and were entitled to seek contribution from others. *See* August 3, 2005, Joint Memorandum concerning "Interim Revisions to CERCLA Removal, RI/FS and RD AOC Models to Clarify Contribution Rights and Protection Under Section 113(f)," Ex. A to Doc. #135.

### b) Cases Cited by Plaintiffs are Factually Distinguishable

Plaintiffs do cite to several cases in which PRPs, who entered into administrative or judicially approved settlements with the government, were permitted to pursue § 107(a) claims for cost recovery. Each case cited, however, is factually distinguishable from the case at bar. The plaintiffs in those cases could not bring a § 113(f)(3)(B) contribution claim since they had not been sued under §§ 106 or 107 and, despite the "settlement agreements," had not resolved their liability to the government for some or all of the costs of the response action.

In each case cited, a cost recovery claim under § 107(a) remained a viable option only because the plaintiffs had no § 113(f) claim available. *See Chevron Envtl. Mgmt. Co. v. BKK Corp.*, No. CV F 11-1396, 2012 U.S. Dist. LEXIS 100509, at *18-20 (E.D. Cal. July 19, 2012) (refusing to dismiss § 107(a) claim where consent decree did not resolve any liability and Chevron therefore had no viable § 113(f) claim); *Agere Systems, Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 225-26 (3d Cir. 2010) (allowing plaintiffs to proceed under § 107(a) since neither trigger for a § 113(f) contribution claim had been satisfied); *W.R. Grace & Co.- Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85, 92-93 (2d Cir. 2009) (allowing plaintiff to pursue § 107(a) claim where no § 113(f) contribution claim was available because consent order had not resolved CERCLA liability).

*Bernstein v. Bankert*, --F.3d--, 2012 WL 6601218 (7th Cir. Dec. 19, 2012), cited by Plaintiffs, is also factually distinguishable. There, the court found that no § 113(f) claim was available to the plaintiffs because, even though the 2002

16

Administrative Order by Consent ("AOC") contained covenants not to sue, those covenants were expressly conditioned on plaintiffs' successful discharge of all their obligations under the AOC. Citing 42 U.S.C. § 9622(f)(3), which provides that a covenant not to sue concerning future liability does not take effect until the President certifies completion of the remedial action, the court concluded that because plaintiffs had not yet fully resolved their liability to the United States, the statutory trigger for a contribution claim had not been met. The court emphasized that the statutory trigger for a § 113(f)(3)(B) contribution claim is not the fact of settlement, but rather the "resolution of liability through that settlement." *Id.* at *7.

In contrast to the AOC in *Bernstein*, the ASAOC at issue here expressly stated that plaintiffs had "as of the Effective Date [August 15, 2006], resolved their liability to the United States for the Work, and Future Response Costs." ASAOC, ¶96b. In fact, it was that resolution of liability that gave them protection from other contribution claims pursuant to § 113(f)(2), and gave them authority to seek contribution from other PRPs pursuant to § 113(f)(3)(B). This resolution of liability provided the statutory trigger for a contribution claim.

Finally, Plaintiffs maintain that their ASAOC is materially identical to the AOC at issue in *ITT Industries,* 506 F.3d 452. In that case, the Sixth Circuit held that the AOC did not trigger a contribution claim under § 113(f) because the AOC did not fully resolve any of plaintiff's liability to the United States, and because the AOC, executed by the EPA under the authority of § 122(a), did not fall within

17

the definition of an "administrative settlement" for purposes of § 113(f)(3)(B). *Id.* at 459-61. The Court will address each of these grounds in turn.

The Sixth Circuit found that the AOC did not resolve plaintiff's liability to the United States because: (1) the EPA expressly reserved its right to sue if plaintiff failed to comply with the terms of the AOC, and reserved its right to terminate the AOC if it disapproved of plaintiff's work plan, and to complete all necessary work itself and then obtain reimbursement from the plaintiff; and (2) the plaintiff had not conceded liability for the contamination.

As in *ITT Industries*, Plaintiffs in this case have not conceded liability, and the EPA has reserved its right to seek legal or equitable relief to enforce the terms of the ASAOC. That, however, is where the similarities end. The EPA, in this case, did not reserve its right to terminate the ASAOC, complete the work itself, and obtain reimbursement from Plaintiffs. Rather, the ASAOC contains a covenant not to sue under § 107(a), and includes provisions for dispute resolution. Moreover, the ASAOC expressly states that it "constitutes an administrative settlement for purposes of Section 113(f)(3)(B) . . . pursuant to which Respondents have, as of the Effective Date, resolved their liability to the United States for the Work, and Future Response Costs." ASAOC, ¶ 96b. Under the circumstances presented here, the ASAOC clearly resolves Plaintiffs' liability to the United States for some or all of the costs of the response action.

The Sixth Circuit, in *ITT Industries,* also found it significant that the AOC was executed by the EPA under authority granted by § 122(a). That subsection of

the statute generally provides that, in order to expedite remedial actions and minimize litigation, the President may enter into a settlement agreement with any person to perform a response action if the President determines that such action will be done properly. 42 U.S.C. § 9622(a).

The Sixth Circuit nevertheless held that settlements under this particular subsection do not constitute "administrative settlements" within the meaning of § 113(f)(3)(B) for purposes of deciding whether a contribution claim exists. The court stated that § 113 must be interpreted as a whole, and noted that § 113(g) (3)(B), which establishes a three-year statute of limitations for contribution actions, refers only to administrative orders under § 122(g), relating to *de minimis* settlements, and § 122(h), relating to cost recovery settlements. It then reasoned that because an administrative settlement under § 122(a) is not mentioned in § 113(g)(3), such a settlement cannot constitute an "administrative settlement" for purposes of § 113(f)(3)(B). 506 F.3d at 460.

As an initial matter, the Court notes the tension between this particular holding and the Sixth Circuit's holding in *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552 (6th Cir. 2007), which was issued a few months before the *ITT Industries* decision. In *RSR*, the Sixth Circuit specifically rejected a similar argument that § 113(g)(3)(B) should be so narrowly construed, and essentially held that § 113(g) establishes a three-year statute of limitations for *all* contribution

19

actions. *Id.* at 557-58.[7] In light of this conflicting case law, it is not entirely clear whether a settlement agreement under § 122(a) constitutes an "administrative settlement" for purposes of § 113(f)(3)(B).

In any event, the ASAOC at issue here could also be interpreted as an administrative order under § 122(h), bringing it squarely within the definition of an "administrative settlement" as construed by the *ITT Industries* court. Paragraph 4 of the Second Amended Complaint specifically states that the EPA entered into the ASAOC pursuant to the authority delegated to it by the President and authorized by "Sections 104, 107 and 122, including Section 122(h), of CERCLA," governing cost recovery settlements. Doc. #69, at ¶ 4. Likewise, the ASAOC itself states that one of its objectives is to "recover response and oversight costs incurred by U.S. EPA with respect to this Settlement Agreement," ASAOC, at ¶ 9, and that Plaintiffs are entitled "to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA," ASAOC, at ¶ 96a. This language makes the ASAOC in this case factually distinguishable from the AOC at issue in *ITT Industries*.

In contrast to all of the cases relied upon by Plaintiffs, the ASAOC in this case did expressly resolve Plaintiffs' liability to the United States for some of the costs of a response action, *i.e.*, for "the Work, and Future Response Costs." Moreover, the parties expressly agreed that the ASAOC was an "administrative

---

[7] Judge Clay, who authored the opinion in *ITT Industries,* filed a dissenting opinion in *RSR Corp.*

settlement" for purposes of § 113(f)(3)(B), triggering the right of the Plaintiffs to

bring a contribution claim against other PRPs.  Accordingly, as a matter of law,

Plaintiffs cannot pursue a cost recovery action under § 107(a).  The Court

therefore SUSTAINS DP&L's motion for summary judgment on the remaining

§ 107(a) claim.

### 3.    Declaratory Judgment

In Count IV of the Second Amended Complaint, Plaintiffs sought a

declaratory judgment concerning Defendants' liability under §§ 107(a) and/or

113(f)(3)(B).  As the Court noted in its February 10, 2011, Decision and Entry, the

viability of the declaratory judgment claim hinges on the viability of the substantive

CERCLA claims.  Accordingly, the Court previously dismissed those portions of the

declaratory judgment claim related to the § 113(f) claim and the "migration"

portion of the § 107 claim.  Having now determined as a matter of law that

Plaintiffs have no viable cost recovery claim under § 107(a), the Court also

SUSTAINS DP&L's motion for summary judgment on the remaining portion of the

declaratory judgment claim.


### III.    Defendant Cargill's Motion for Summary Judgment (Doc. #139) (*Hobart I*)

Defendant Cargill has also moved for summary judgment on all remaining

claims.  Doc. #139.  Cargill argues that summary judgment is warranted because:

(1) Plaintiffs cannot show that hazardous substances from Cargill were actually

taken to the Site; and (2) as argued in DP&L's motion for summary judgment,

21

Plaintiffs have no viable cost recovery claim under § 107(a).  In addition, Cargill argues that the cross-claim for contribution and indemnification brought by co-defendant Waste Management must be dismissed because such remedies are available only if Cargill is liable or potentially liable under § 107.

Having found, as a matter of law, that Plaintiffs have no viable cost recovery claim under § 107, the Court SUSTAINS Cargill's motion for summary judgment, Doc. #139, on that ground.  There is no need to address Cargill's alternative argument.

## IV.    Defendants' Motion to Dismiss (Doc. #12) (*Hobart II*)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants GlaxoSmithKline LLC, DAP Products Inc., Coca-Cola Enterprises Inc. and The Sherwin-Williams Company have moved to dismiss Plaintiffs' Complaint in *Hobart II* for failure to state a claim upon which relief can be granted.  Doc. #12.  As previously noted, the causes of action asserted against these defendants are identical to the causes of action asserted against the defendants in *Hobart I*.

For the reasons set forth in this Court's February 10, 2011, Decision and Entry in *Hobart I* (Doc. #71), and for the reasons set forth above, the Court finds that Plaintiffs have failed to state a claim upon which relief can be granted.  The Court therefore SUSTAINS Defendants' motion to dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

**V.     Plaintiffs' Motion for Leave to Amend Complaint (Doc. #124)**

Plaintiffs have also moved for leave to file a third amended complaint (Doc.

#124 in Case No. 3:10-cv-195) so that they can: (1) add several newly-discovered

defendants; (2) assert a theory of owner/operator liability against Defendant DP&L;

and (3) add allegations that Defendant Waste Management is the successor to

waste transporters not previously identified.  The proposed Third Amended

Complaint asserts the same claims previously asserted: (1) CERCLA cost recovery

under § 107(a); (2) CERCLA contribution under § 113(f)(3)(B); (3) unjust

enrichment; and (4) declaratory judgment.[8]

Federal Rule of Civil Procedure 15(a)(2) states that the court should freely

give leave to amend "when justice so requires."  Nevertheless, leave may be

denied when there has been undue delay, bad faith, a repeated failure to cure

deficiencies by previous amendments, undue prejudice to the opposing party, or

when the proposed amendment would be futile.  *Foman v. Davis*, 371 U.S. 178,

182 (1962).

As Defendants correctly note, the proposed amendments in this case would

be futile; they do nothing to cure the fatal defect inherent in Plaintiffs' remaining

claims.  Because Plaintiffs resolved some of their liability to the United States in an

administrative settlement, they were limited to a contribution action under

_____

[8] During a conference call held on July 18, 2012, counsel for Plaintiffs
acknowledged that the Court had previously dismissed Counts 2 and 3, and
portions of Counts 1 and 4.  He assured the Court and opposing counsel that
Plaintiffs are aware that the previous rulings are the law of the case, and are not
seeking reconsideration; they simply want to preserve the issues for appeal.

§ 113(f).  They cannot pursue a cost recovery action under § 107(a).  For this reason, the Court OVERRULES Plaintiffs' motion for leave to file a third amended complaint.  Doc. #124.


## VI.    Counterclaims and Crossclaims

In *Hobart I*, Defendants Waste Management and Cargill filed cross-claims against all other defendants, seeking contribution and indemnification in the event they were found liable.  Cargill also filed a similar counterclaim against Plaintiffs. Having now determined that Defendants are entitled to dismissal of all claims asserted by Plaintiffs, the Court finds that all outstanding counterclaims and crossclaims are moot and must be dismissed.


## VII.   Other Pending Motions

In light of the foregoing, the Court OVERRULES AS MOOT the following pending motions: (1) Defendant DP&L's objection to Magistrate Judge Ovington's March 23, 2012, Decision and Entry (Doc. #109); (2) Defendant DP&L's motion to stay discovery pending a decision on the motion for summary judgment (Doc. #122); and (3) Plaintiffs' motion to modify the scheduling order (Doc. #127).

VIII.    **Conclusion**

For the reasons set forth above, the Court:

- **SUSTAINS** Defendant DP&L's motion for summary judgment (Doc. #121 in Case No. 3:10-cv-195);
- **SUSTAINS** Defendant Cargill's motion for summary judgment (Doc. #139 in Case No. 3:10-cv-195);
- **SUSTAINS** Defendants' motion to dismiss (Doc. #12 in Case No. 3:12-cv-213);
- **OVERRULES** Plaintiffs' motion for leave to file a third amended complaint (Doc. #124 in Case No. 3:10-cv-195);
- **DISMISSES AS MOOT** all counterclaims and cross claims filed in Case No. 3:10-cv-195;
- **OVERRULES AS MOOT** Defendant DP&L's objection to Magistrate Judge Ovington's March 23, 2012, Decision and Entry (Doc. #109 in Case No. 3:10-cv-195);
- **OVERRULES AS MOOT** Defendant DP&L's motion to stay discovery (Doc. #122 in Case No. 3:10-cv-195); and
- **OVERRULES AS MOOT** Plaintiffs' motion to modify scheduling order (Doc. #127 in Case No. 3:10-cv-195).

Judgment will be entered, in both of the above-captioned cases, in favor of Defendants and against Plaintiffs.

The captioned causes are hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: February 8, 2013

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE

25